57 Cal.Rptr. 121]

[Crim. No. 11698. Second Dist., Div. One. Feb. 28, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. RONALD
CLAY WARRICK, Defendant and Appellant.

Charles M. Berg, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and Richard L. Hamilton, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—This is an appeal from a judgment of conviction of murder.

In an information filed in Los Angeles County on April 28, 1965, defendant was charged with murdering Louise McCarroll on April 6, 1965. Defendant pleaded not guilty. The court, pursuant to defendant's request and section 1871, Code of Civil Procedure, appointed certain doctors to examine defendant and to make a report to the court. Time for the trial was waived. The cause by stipulation and consent of all concerned was submitted upon the testimony in the transcript of the preliminary proceedings, each side reserving the right to offer additional evidence. The defendant was found guilty of murder in the second degree. Defendant was sentenced to the state prison for the term prescribed by law. A timely notice of appeal was filed.

A résumé of some of the facts is as follows: On April 6, 1965, Officers Kirkpatrick and Guild, of the Maywood police, were dispatched to 4546 East Slauson Avenue, Maywood, to investigate a telephone call report by a man that he had killed his wife. When the officers arrived at the stated address, defendant was standing at the curb in the street. ▮▮▮ Defendant said to the officers: "I killed my wife; I killed my wife; hurry, I killed my wife." Defendant thereupon directed the officers to his apartment in the building wherein they found the victim lying across the bed. Kirkpatrick smelled gas in the apartment and turned off the gas jets on the stove. Kirkpatrick asked defendant what he had used to strangle the decedent and defendant pointed to some nylon stockings in

a closet. Defendant was then placed under arrest which, in point of time, was three minutes or so after the officers had entered the apartment. The defendant, in the officers' opinion, was upset but not drunk and he was able to communicate coherently with the officers. Guild searched the defendant and found an electric shaver cord in his right rear pocket. An examination of the nylon stockings revealed no stretching or tears which might have been present had they been used in the strangulation of the victim. The coroner's report indicated that the most probable weapon, under the circumstances, would be the electric shaver cord. Shortly after defendant was booked, he made a free and voluntary signed statement to the police. Prior to this occasion, defendant was told of his right to counsel and of his right to remain silent. The defendant in his statement in effect stated that he and the decedent had been living together since February 15, 1964; that they were both alcoholics and that they had been drinking on the day in question; that the victim had gone out to get some wine but did not return for about three hours and upon her return had told defendant she had been to a bar; that defendant then tried to strangle her with his hands, but his grip weakened so he wrapped a nylon stocking around her throat and held it for an indefinite time; that after he could not obtain a pulse reading of the victim, he then called the police. The defendant read the statement and corrected it where he wished. Several hours later, defendant again was asked about the strangulation weapon and he repeated that it was a nylon stocking. The officer who was with defendant when the statement was being prepared by defendant stated that he would not classify the defendant as drunk as of that time. The death of the victim was caused by asphyxia due to strangulation and a contributing cause was acute alcohol intoxication.

Appellant now asserts that it was error to admit the appellant's confessions into evidence and that because he was enraged at the time he killed the victim, the most he should be convicted of is involuntary manslaughter.

There was no objection to the confessions in either the preliminary hearing or the trial in the superior court. Under the circumstances, the admissibility of the confessions cannot be raised for the first time on appeal. (See *People* v. *Perez,* 62 Cal.2d 769, 774 [44 Cal.Rptr. 326, 401 P.2d 934]; *People* v. *Woods,* 239 Cal.App.2d 697, 704-705 [49 Cal.Rptr. 266]; *People* v. *Sanchez,* 239 Cal.App.2d 51, 55 [48 Cal.Rptr. 424]; *People* v. *Palmer,* 236 Cal.App.2d 645, 650 [46 Cal.Rptr.

449].) The statements made by appellant at the apartment and immediately prior thereto were admissible. The statements were spontaneous in character. (See *People* v. *Treolar*, 64 Cal.2d 141, 145, 146-147 [49 Cal.Rptr. 100, 410 P.2d 620].) When asked by the officer at the apartment what weapon he had used, he pointed to the nylon stockings in a closet. He made no statement which involves the principles of *Dorado*. (See *People* v. *Graves*, 64 Cal.2d 208, 210 [49 Cal. Rptr. 386, 411 P.2d 114].) In any event, appellant was not under custody at the time the question was asked.

At the jail, the officers complied with the directions of *Dorado*, i.e., defendant was advised of his right to counsel and of his right to remain silent. As to whether he waived those rights, the record shows that he was in possession of his faculties, he communicated coherently and he read over and corrected the statement. In *People* v. *Culp*, 241 Cal.App.2d 352, 356-357 [50 Cal.Rptr. 471], it is said:

"Defendant's contention that the extrajudicial statements of his codefendant, Pruett, were improperly received cannot be sustained. Neither defendant's statement was secured in violation of the *Escobedo* and *Dorado* rules. The record shows that both accuseds were adequately informed of their constitutional rights to counsel and to remain silent. The Pruett statements were relevant and material to the charges against him. He was charged with voluntary manslaughter which, by definition, necessarily includes involuntary manslaughter; the unlawful killing of a human being without malice resulting from the commission of a lawful act which might produce death, in an unlawful manner, or without due caution or circumspection (Pen. Code, § 192, subd. 2). His statements of what he did and did not do in the circumstances confronting him, Culp and the victim on the night in question were obviously relevant to the issue of failure to use due caution or circumspection. The objection that they were rendered incompetent because of his intoxication has no merit addressed either to the issue of whether he understood his constitutional rights or whether he knew what he was saying. The officer's testimony that Pruett, although intoxicated on the occasion of the first interrogation, was rational and in possession of his faculties at each interrogation was not contradicted. The objection appears to go to weight or fact rather than to the law and cannot be sustained on the present record."

The rules of *Miranda* v. *Arizona*, 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974] do not apply to this case.

See *Johnson* v. *New Jersey*, 384 U.S. 719, 732 [16 L.Ed.2d 882, 86 S.Ct. 1772], where it is said:

"All of the reasons set forth above for making *Escobedo* and *Miranda* non-retroactive suggests that these decisions should apply only to trials *begun* after the decisions were announced. Future defendants will benefit fully from our new standards governing in-custody interrogation, while past defendants may still avail themselves of the voluntariness test. Law enforcement officers and trial courts will have fair notice that statements taken in violation of these standards may not be used against an accused. Prospective application only to trials begun after the standards were announced is particularly appropriate here. Authorities attempting to protect the privilege have not been apprised heretofore of the specific safeguards which are now obligatory. Consequently they have adopted devices which, although below the constitutional minimum, were not intentional evasions of the requirements of the privilege. In these circumstances, to upset all of the convictions still pending on direct appeal which were obtained in trials preceding *Escobedo* and *Miranda* would impose an unjustifiable burden on the administration of justice." (Italics added.) (See also *People* v. *Rollins,* 65 Cal.2d 681 [56 Cal.Rptr. 295, 423 P.2d 221].)

We cannot find that as a matter of law the evidence is insufficient to support the judgment of murder in the second degree. (See *People* v. *Matlock,* 51 Cal.2d 682, 698 [336 P.2d 505, 71 A.L.R.2d 605]; *People* v. *Lamothe,* 222 Cal.App.2d 314, 321 [35 Cal.Rptr. 122].) Malice was clearly present in the case at bench. There is no evidence which establishes a diminished capacity to form malice. In *People* v. *Bender,* 27 Cal.2d 164, 178 [163 P.2d 8], it is properly said:

"The evidence does not, as defendant contends, establish at the most that defendant was guilty of manslaughter. It cannot be said of the injuries inflicted here, as was said in *People* v. *Kelley* (1929) 208 Cal. 387, 393 [281 P. 609], that 'there is nothing in the record from which it may with reason be argued that they were inflicted with that intent or that malice aforethought which is a necessary ingredient of the crime of murder.' The evidence that deceased was strangled supports the finding that defendant acted with 'malice aforethought'; i.e., 'the circumstances attending the killing show an abandoned and malignant heart.' (Pen. Code, §§ 187, 188.) That finding, and the further finding that defendant did not act on provocation adequate to reduce the offense to man-

slaughter, are based on sufficient evidence and, hence, are binding on us." (See also *People* v. *Jones,* 232 Cal.App.2d 379, 389 [42 Cal.Rptr. 714].)

The judgment is affirmed.

Wood, P. J., and Lillie, J., concurred.