[Crim. No. 12514.   Second Dist., Div. Four.   June 20, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. STEVEN O. CLARK, Defendant and Appellant.

Rollyn Jon Habeck, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

KINGSLEY, J.—Defendant was charged, jointly with Michael Anthony Davis, with grand theft, in violation of section 487, subdivision 3 of the Penal Code (count I), and with the unlawful taking of an automobile, in violation of section 10851 of the Vehicle Code (count II). Pursuant to a motion under section 995 of the Penal Code, count I was dismissed. Both defendants pled not guilty to count II. Defendant was tried separately. Trial by jury was duly waived and the case was submitted on the transcript of the testimony taken at the preliminary examination, together with other testimony. Defendant was found guilty.

So far as appears from the record, the trial court never denied probation in express terms. An examination of the superior court file discloses a probation report, recommending commitment to the Youth Authority and that report is

duly indorsed by the trial judge as having been read and considered. At the time when probation should have been considered, the following proceedings occurred:

"Los Angeles, California; Wednesday, April 13, 1966; 9:30 a.m.

". . . . . . . . . . .

"The Court: Steven O. Clark.

"Mr. Porter: Could that matter be continued for a short while? I have spoken with Mr. Clark this morning. There may be some information that may be of interest to the Court in this matter.

"The Court: The recommendation is for C.Y.A.

"Mr. Porter: Yes, your Honor.

"The Court: You don't approve of that recommendation?

"Mr. Porter: Well, my client doesn't, but more important than that, he believes that the person who actually did this will come in and tell you that he did it.

"The Court: How much time do you want for a continuance?

"Mr. Porter: I would say a week.

"The Court: The matter of Steven O. Clark will be continued for one week for probation and sentence upon the request of the defendant.

"Mr. Porter: Thank you, your Honor. Would that be next Wednesday?

"The Court: April 20; 9:30. The defendant is remanded.

"(Whereupon the matter was continued to Wednesday, April 13, 1966, at 9:30 a.m.)"

At the subsequent date, the following occurred:

"The Court: Steven O. Clark.

"Mr. Porter: Yes, your Honor. If you recall, your Honor, this matter was continued from one week ago to today because there was some question about——

"The Court: The recommendation was C.Y.A.

"Mr. Porter: Yes, your Honor. And I would like at this point for the matter to go over a short period for the purpose of submitting affidavits in support of a motion for a new trial. I have talked to two witnesses who indicate something that I think would interest the Court in connection with this matter.

"The Court: We have Michael Anthony Davis?

"Mr. Gross: He was sentenced to C.Y.A. and committed to C.Y.A. yesterday.

"THE COURT: I think your motion will be denied. Send this man to C.Y.A.

"MR. PORTER: Your Honor, if I were able to submit these affidavits to you I think——

"THE COURT: Why haven't you done so thus far?

"MR. PORTER: The mother and Steven said that they had witnesses who could help this case. Now, the boys came into my office last night and of course I didn't have time to submit documents. These young men—in order to give you just a thumbnail sketch of what they will be able to testify to—these two young men came to see me because the mother contacted them. They told me that they knew that this young boy, his name is William Creighton Lewis—this is the young man that the defendant has all along said actually stole the car and that he was just riding with them. These young men told me that Lewis had told them that he was coming down to court and as they said 'cut Steven loose.' That he was going to admit it. He also told them——

"THE COURT: This is just a referral to the C.Y.A. We have to put it over for three weeks. Come back at that time. If you have some affidavits the Court will be willing to listen. At this time all motions will be denied.

"The matter will be referred to C.Y.A. and the matter will be continued ninety days, or three weeks, rather; May 11. If you come up with anything new, why, I will be glad to listen to it at that time.

"MR. PORTER: Thank you, your Honor.

"(Whereupon, the matter was continued to Wednesday, May 11, 1966, at 9:30 A.M.)"

The final hearing, at which judgment was pronounced was as follows:

"THE COURT: Steven Clark.

"MR. PORTER: Yes, your Honor. I have the statement that I indicated I would bring to the Court. This is an affidavit, the proposed witness in support of the motion for the new trial. I understand that the young fellow mentioned in the affidavit is presently in jail for stealing another car.

"THE COURT: Counsel, I am going to deny your motion for a new trial. I think this boy should go to C.Y.A. for his own good. I don't think anything will be gained by it.

"The motion will be denied. I am sorry, counsel. The boy is assigned to C.Y.A. and they have accepted him and he will be committed pending his being picked up by the C.Y.A.

" (Whereupon, the matter was concluded.) "

We conclude that this, although not express, was a sufficient indication of the trial court's determination to deny probation.

On this appeal, appointed counsel argues: (1) that the evidence was insufficient to support the finding of guilt; and (2) that defendant should not have been found guilty of the Vehicle Code offense because the same trial judge, on the same preliminary transcript, at a separate trial, found Davis guilty only of the lesser offense of a violation of section 499b of the Penal Code. In addition, we consider whether the trial court acted improperly in denying the motion for new trial.

I

■■■ We may dispose briefly of the contention that defendant was unlawfully committed to the Youth Authority for the Vehicle Code offense whereas his codefendant was found guilty of a lesser offense. The trials were separate; even on a joint trial, the acquittal, or the conviction of a lesser offense, of a codefendant does not invalidate a conviction of an appellant if the evidence was sufficient to support his own conviction. He cannot claim, as of right, a leniency afforded to another. (*People* v. *Gutierrez* (1962) 207 Cal.App.2d 529 [24 Cal.Rptr. 441]; *People* v. *Taylor* (1948) 88 Cal.App.2d 983 [199 P.2d 751].)

II

■■■ We see no error in denying the motion for new trial on the ground urged on the trial court—which amounted to newly discovered evidence. We have quoted above the proceedings relating to that matter. Nowhere does it appear that defendant or his counsel had used the diligence required to trace down the possible witnesses. Davis, who might have been called was in custody and, had defendant desired his testimony, he could and should have sought the process of the court to compel his attendance. We have examined the sole affidavit submitted and referred to by trial counsel. It is no more than the statement of a third party that one Lewis had confessed to the affiant that he had stolen the car in question and that Lewis had promised the affiant to appear and testify for defendant. But there was no affidavit from Lewis and, although counsel told the court that Lewis was in jail, no effort was made to produce him. The showing was patently insufficient.

## III

■ However, we conclude that the evidence does not support the conviction. One witness, Mrs. Bart, testified that she was an officer of the corporation that owned the car involved (a yellow Mustang), that early in the evening of December 10, 1965, the car was returned to her place of business from a repair shop, and that, at about 8 p.m., as she left the premises, she noticed that the car was gone. The witness had never given anyone permission to take the car. Mr. Burnfeld was the only other person who could have given such permission. Mr. Burnfeld was never called as a witness.

At about 12:30 a.m., on December 11, 1965, a police officer observed the car going through a boulevard stop. He gave chase. The car accelerated and, after a chase at high speed, the car collided with another vehicle and stopped. Four persons, three boys and a girl, jumped out of the car and ran. The officer pursued two and caught defendant. After his arrest, at the police station, and after proper warning of his constitutional rights, defendant gave a statement to Officer Thompson, as follows: "I asked the defendant Clark if he was driving the car, what he knew about the pursuit that we were involved in. He stated he was not driving; that he was in the vehicle. He stated he was in the right front of the vehicle and after the car had a traffic accident he left the vehicle and ran between the houses where I caught him.

"Q. Did the defendant say anything about whether or not he thought the car was stolen?

"A. At the time I asked him did he know the car was stolen. He said he didn't know it was stolen until we started chasing him, then he was pretty sure it was stolen, but didn't know definitely where it was stolen or who stole it."

The defense was an alibi for the time the car was taken and a claim of lack of knowledge that it had been stolen. The alibi, supported by the testimony of Davis' mother and by other witnesses, was that defendant had been at the Davis home from 5 until 9 on December 10th, that he left the Davis home at about 9 in company with Davis and Willie Hunter. That, after some stops, they arrived at a party near 51st and Normandie about 10:40 p.m. Hunter's car, as testified by defendant and his witnesses, was a black Buick. That Hunter left the party and that a friend of Davis, named Creighton, offered to drive him home. In company with Creighton (who drove) Davis and Creighton's girl friend, they left the party

in the car herein involved. That the chase, running away and apprehension followed as testified by the police. He explained his running away as "panic" and that he was "afraid of the police."

While the trial court was not required to believe defendant or his witnesses, still a conviction cannot be based on a vacuum; there must be affirmative evidence for the prosecution to show guilt. Here there is no evidence that defendant was anything other than a passenger, so that his conviction must rest on the theory that defendant was "a party or accessory to or an accomplice in the driving," of the Mustang. But that theory requires proof of more than mere presence in the automobile. At a minimum, defendant must have known that the vehicle had been unlawfully acquired and must have had that knowledge at a time when he could be said to have, in some way, aided or assisted in the driving. Knowledge of the unlawful taking, acquired after the ride started and when defendant could neither stop the trip nor leave the vehicle is not enough. But, in the instant case, none of the prosecution's evidence is inconsistent with a state of innocence. The superior court file, before us, shows a young Negro boy with a history of prior involvement with the law; nothing connects him with the Mustang prior to the ride which resulted in the chase and arrest; the sudden acceleration of that vehicle when the police sought to stop it for a minor offense could well have been the fact that created, for the first time, a suspicion that something was wrong and a reflex reaction that, with his record, he would be well advised to disassociate himself from any subsequent proceedings. In other words, while (if his alibi and other evidence was rejected) there is nothing to show that he had not participated in the original taking, or that he had not knowingly accepted a ride in an illegally acquired car, and while his running away may have been caused by his knowledge of his individual guilt, still it is equally true that there is nothing to show that he was involved in either of these ways or otherwise than as a innocent passenger or that his running away was not a result of something other than a consciousness of guilt. A conviction based on such evidence may not stand.

The judgment is reversed.

Files, P. J., and Jefferson, J., concurred.