[Crim. No. 3035.   Fourth Dist., Div. Two.   Apr. 22, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. LORENZO
MILES et al., Defendants and Appellants.

Richard M. Hippard and Bob N. Krug, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Phillip G. Samovar, Deputy Attorney General, for Plaintiff and Respondent.

TAMURA, J.—By information Prince (also known as Lynell Johnson), Miles and Byrd were jointly charged with attempted robbery (Pen. Code, § 211) and driving or taking a motor vehicle without the owner's consent (Veh. Code, § 10851). Miles was charged with being armed at the time of the offense and also with two priors. Defendants pleaded not guilty and waived a jury.

On motion of the district attorney, Prince's trial was severed from that of the other two. He was tried first and found guilty on both counts. Thereafter Miles and Byrd were jointly tried by the same judge who tried Prince and were found guilty on both counts. The court made no finding on the allegation that Miles was armed but did find that he had suffered two prior convictions as alleged. Applications for probation were denied and defendants were sentenced to state prison, sentences on each count to run concurrently. Prince and Miles have appealed from the judgments of conviction.[1]

## PRINCE APPEAL

On December 9, 1966, defendant Miles went into Gross Furs, a store owned by Mr. and Mrs. Rosenberg, and stated

---

[1] Although there were two separate trials, the record on appeal consists of one consolidated record for the two trials.

that he was looking for a fur for his wife. After looking at some pieces, including one which Mr. Rosenberg brought out from a vault, Miles stated that he would be back later. On December 10 he returned to the store driving a red station wagon. He was accompanied by defendants Prince, Byrd and a "bushy-haired" man. Mrs. Rosenberg identified defendant Prince as one of the occupants of the vehicle on that occasion. Miles entered the store, looked at some furs, showed one piece to the other men who were still in the car and asked to see the one Mr. Rosenberg had previously removed from the vault. Rosenberg became suspicious and told his wife to go out for help. At this point a customer entered. Mr. Rosenberg asked her to remain in the store and engaged her in conversation. Meanwhile a neighbor, presumably called by Mrs. Rosenberg, entered the store and pretended to be a customer. Miles thereupon asked Rosenberg for permission to use the telephone. When Miles dialed the telephone, Rosenberg was close enough to tell that no one answered. However, Miles stated that he called for his wife but that a man kept answering. Miles then left the store.

On the morning of December 12 the men returned again in a red Chevrolet station wagon. Mr. Rosenberg told one of his employees, Mrs. Olson, to lock the back door and sent her out of one of the other doors. The "bushy-haired" man was standing guard outside at the door and as Mrs. Olson came out he grabbed her but she managed to escape.[2] As Mrs. Olson left the store she observed a red and white station wagon parked on the street with a Negro man sitting at the driver's seat. Meanwhile Mr. Rosenberg left the store to call the police.

Mrs. Rosenberg testified that on the morning of December 12 defendant Miles and Byrd entered the store and requested to see the owner to put a deposit on a fur. She observed a "bushy-haired" man outside standing guard at one of the doors. Mrs. Rosenberg offered to help Miles and Byrd but they insisted on seeing the "owner." When she told them that he would be back later, Byrd pulled a gun out of his pocket and Mrs. Rosenberg stepped aside. Miles and Byrd walked to the back of the store and the next words Mrs. Rosenberg heard were, "Let's get out of here." The two then left by the front door.

Stanley Bowman of the traffic division heard an all-points

---

[2]The "bushy-haired" man was never apprehended. He was identified as the same "bushy-haired" man who was with defendants on December 10.

bulletin to be on the lookout for a vehicle bearing license No. OBC 398. He observed a red and white 1957 Chevrolet station wagon bearing license No. QBC 398 which was occupied by three persons. When he turned on his red light the vehicle accelerated and he pursued it. Eventually the station wagon drove off the road and into a wash at a speed of approximately 90 miles per hour and came to rest at a small bank. The occupants jumped out and started running. The officer fired several shots at the suspects and Byrd and Miles stopped. Assistance arrived and Prince was also apprehended. During the chase the officer observed several articles being thrown from the vehicle. In a subsequent search of the area the officers discovered two guns.

Mr. Hawkins testified that he was the owner of a red and white station wagon license No. QBC 398, that on December 10 his vehicle was missing, that he had not given anyone permission to drive it, and that the vehicle defendants were driving during the chase belonged to him. It was also stipulated that if a certain witness were called, he would testify that on December 10 he saw a red and white station wagon bearing license No. QBC 398 parked near Gross Furs. It was also stipulated that if another witness were called, he would testify that he saw a Negro man drive off in Hawkins' automobile on December 10.

At the time the three were booked, Prince had twelve cents on his person, Byrd three cents and Miles $8.08. None of them had any blank checks on his person.

Officer Adamson testified that shortly after Prince was arrested he was warned of his rights and interrogated. During the interrogation Prince stated: On December 10 he was approached by defendant Miles in Los Angeles to be a ''spot man'' for a fur job in San Bernardino. Miles stated that ''they would pay [Prince] about twenty-five hundred dollars,'' so he, Prince, agreed to go along. On December 12 Prince, Miles and Byrd drove to San Bernardino in a 1957 Chevrolet, parked the car, got into a red and white Chevrolet station wagon, drove to the fur store and parked. Byrd and Miles got out and told Prince to remain in the car and to honk the horn if he saw the police. In about five minutes Byrd and Miles returned, Miles took the wheel, and as they were driving they were pursued by the police. They eventually came to a stop in a wash and were apprehended. Prince knew that there was a gun in the first car but did not know which one of the three took it when they changed to the red and white Chevrolet station wagon.

Adamson held a second interview with Prince on December 13, which interview was taped. After being warned of his rights Prince stated that Miles told him the reason they left the fur store was "the people were acting funny . . . '[T]he man ran out of the door and the woman after her. . . .' '' Prince also stated "Now, I don't know if Lorenzo [Miles] was going to try to con the man with a check or con the man to take it off or what, you know, robbery. . . . Whatever happened, he wasn't ready for it. They were inexperienced, the four of us. It seems like he went in and with something other than robbery in his mind.'' The remainder of Prince's statements at that interview was substantially the same as that given at the first interrogation.

Prince did not take the stand or present any evidence in his defense.

He now seeks a reversal on the following grounds: (1) The evidence was insufficient to support his conviction on either count; (2) the corpus delicti was not established prior to the introduction of his admissions; (3) inadequacy of representation. The contentions are without merit.

There was substantial evidence to support his conviction of attempted robbery.

Robbery is defined as the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by force or fear. (Pen. Code, § 211.)     The elements of attempt are specific intent to commit a particular crime and a direct act done towards its commission. (*People* v. *Snyder,* 15 Cal.2d 706, 708 [104 P.2d 639]; *People* v. *Stites,* 75 Cal. 570, 575 [17 P. 673]; *People* v. *Martell,* 197 Cal.App.2d 195, 197 [16 Cal. Rptr. 918].) Intent to steal may be proved by inference from all the circumstances of the case. (*People* v. *Hall,* 253 Cal. App.2d 1051, 1054 [61 Cal.Rptr. 676]; *People* v. *Ross,* 229 Cal.App.2d 344, 346 [40 Cal.Rptr. 296].)     As to defendant Prince, his admissions to the police were sufficient evidence of his intent to be a lookout for the robbery and, hence, an accomplice. He was also identified as being with Miles on a previous visit to the fur store on December 10. On December 12 when the police gave chase and arrested defendants, Prince was one of the men apprehended. The court could infer an intent to rob on December 12 from the fact that the "bushy-haired" man grabbed one of the employees as she left the store; that the man with defendant Miles pulled a gun; that they were driving a car not their own; that they fled at

90 miles per hour when chased by police; and that they had no money or blank check with which to put a deposit on a fur if that were their true purpose in coming to the store on December 12.

Direct acts toward the accomplishment of the robbery were present. The acts of proximity need not include the last proximate act for the completion of the crime. It is sufficient that the overt acts reach far enough toward the accomplishment of the offense to amount to the "*commencement* of its consummation." (*People* v. *Lanzit,* 70 Cal.App. 498, 505 [233 P. 816]; *People* v. *Gibson,* 94 Cal.App.2d 468, 471 [210 P.2d 747]; *People* v. *Parrish,* 87 Cal.App.2d 853, 856 [197 P.2d 804].)

There was substantial evidence to support Prince's conviction of attempted robbery.

■ There was likewise substantial evidence to support his conviction for driving or taking a motor vehicle without the owner's consent. The owner testified that the car in question was taken without his permission; all three defendants were in the car on December 12; and they attempted to flee from the police after they were stopped. There was also evidence that defendants were riding in the same car two days prior to the robbery.

At Prince's trial there was evidence that Miles was the driver; however, that did not preclude defendant Prince's conviction as an accomplice. ■ Section 10851 of the Vehicle Code provides accessorial liability for an accomplice in the driving or unauthorized taking; mere possession of a stolen car under suspicious circumstances is sufficient to sustain a conviction of unlawful taking. (*People* v. *Hopkins,* 214 Cal. App.2d 487, 491-492 [29 Cal.Rptr. 636]; *People* v. *Warren,* 175 Cal.App.2d 233, 244 [346 P.2d 64].)

Flight upon apprehension is sufficient to show specific intent to deprive the owner of temporary possession. (*People* v. *Williams,* 264 Cal.App.2d 885, 888 [70 Cal.Rptr. 882].) It is true that possession plus flight was insufficient evidence to sustain a conviction in *People* v. *Clark,* 251 Cal.App.2d 868 [60 Cal.Rptr. 58]; however, the court noted that "nothing connects him [the defendant] with the Mustang prior to the ride which resulted in the chase and arrest. . . ." (*People* v. *Clark, supra,* p. 874.) ■ In the instant case there was testimony that the defendants were riding in the car two days before and also evidence that the participants intended to use the stolen car to avoid detection. The evidence was sufficient to convict Prince on the second count.

Defendant Prince contends that corpus delicti was not established before his admissions were introduced. Since no objection was raised at trial as to the order of proof, the issue may not be raised for the first time on appeal. (See *People* v. *Peterson,* 251 Cal.App.2d 676, 679-680 [59 Cal.Rptr. 694]; *People* v. *Warrick,* 249 Cal.App.2d 1, 3 [57 Cal.Rptr. 121].) In any case "[a] prima facie showing of the corpus delicti is all that is required for the introduction of incriminating admissions, and that showing may be by circumstances and legitimate inference." (*People* v. *Spencer,* 60 Cal.2d 64, 76 [31 Cal.Rptr. 782, 383 P.2d 134], cert. den. 377 U.S. 1007 [12 L.Ed.2d 1055, 84 S.Ct. 1924]; *People* v. *Powell,* 34 Cal.2d 196, 203 [208 P.2d 974].) In the instant case the evidence, as previously enumerated, reveals that prima facie proof of corpus delicti was established before the admissions were introduced.

Next, defendant Prince contends he was inadequately represented because his counsel also represented defendants Byrd and Miles whose defenses conflicted with his. It is noteworthy that the trial was severed as between Prince and Miles. Defendant Prince cites no cases for the proposition that because his attorney represented a codefendant at a subsequent trial, this denied him adequate representation[3] nor does he show how he was in any way prejudiced by this procedure. However, no objection was ever made at trial and we can find no prejudice whatever that resulted. (See *People* v. *Fain,* 70 Cal.2d 588, 601 [75 Cal.Rptr. 633, 451 P.2d 65].) Therefore, we find this argument to be without merit.

As to defendant Prince, the judgment is affirmed.

### MILES APPEAL

Immediately following Prince's trial, the same judge proceeded to try Miles and Byrd.[4]

---

[3]Although the court in *People* v. *Keesee,* 250 Cal.App.2d 794 [58 Cal. Rptr. 780], found reversible error where actual prejudice was shown to have resulted from an attorney's dual representation of two clients at the *same* trial, the instant case is clearly distinguishable.

[4]Prince's trial was apparently severed from the trial of the other two to avoid the proscription of *People* v. *Aranda,* 63 Cal.2d 518, 530 [47 Cal.Rptr. 353, 407 P.2d 265]. The *Aranda* requirement applies to non-jury trials. (*People* v. *Charles,* 66 Cal.2d 330, 338 [57 Cal.Rptr. 745, 425 P.2d 545].) The district attorney must have felt that it was impractical or impossible to delete from Prince's admissions those portions which implicated codefendant Miles. In the present case although there was a severance in form, the record reveals that the same trier of fact tried both cases, one after the other. While it is unnecessary for us to determine whether this constituted violation of the *Aranda* rule since defend-

At the outset the parties stipulated, in substance, that all of the testimony introduced at Prince's trial, except his admissions, be deemed to have been received in evidence.

The prosecution called Prince as its first witness. Prince first declined to answer any questions on Fifth Amendment grounds. The court ruled that he was not entitled to claim the privilege against self-incrimination on the ground that he had already been found guilty and directed him to answer questions propounded by the district attorney.[5] Following the court's ruling, Prince admitted that he, Byrd and Miles were at Gross Furs on the day in question but denied that he was a "spot man," or that he was offered money to come to San Bernardino. He testified that Miles stated he was going to San Bernardino to look at some furs. He admitted that they were in a red and white Chevrolet station wagon, that they parked near Gross Furs, that Miles and Byrd left the station wagon and went in the direction of Gross Furs, that Prince remained in the car, that Miles and Byrd returned shortly and as they drove off they were pursued by the police. He testified that he saw a gun in the automobile in which they travelled to San Bernardino.

Thereafter the prosecution called Officer Adamson. Over defendant's objection, the officer was permitted to testify to the conversation he had with Prince after he was arrested. He testified that Prince told him that Miles had offered Prince $2,500 to go with him on a "job" in San Bernardino, that Miles had stated that he had staked out a fur shop "they wanted to hold up" and that Miles had asked Prince to go along and act as a "spot man."

■ The judgment of conviction of Miles for attempted robbery must be reversed.

The trial of the present case occurred on April 3 and 4, 1967. At that time section 1235 of the Evidence Code,[6] by its

ant did not object to the same trier of fact trying codefendants Miles and Byrd, and, in fact, objected to severance, it would appear that the procedure followed violates the spirit if not the letter of *Aranda*.

[5] Of course, it is generally true that the claim of privilege fails once a witness is convicted (McCormick, Evidence, § 135; 8 Wigmore, Evidence, § 2279(a).) However, the privilege has been held to apply where a witness has not been sentenced and his conviction has not become final. (*Mills* v. *United States*, 281 F.2d 736, 741.) As the conviction for attempted robber yis being reversed on other grounds, we need not decide the question.

[6] Section 1235 of the Evidence Code provides: "Evidence of a statement made by a witness is not made inadmissible by the hearsay rule if the statement is inconsistent with his testimony at the hearing and is offered in compliance with Section 770."

terms, permitted a witness' prior inconsistent statement to be considered as substantive evidence by the trier of fact. Two months later in *People* v. *Johnson* (June 3, 1968) 68 Cal.2d 646, 660 [68 Cal.Rptr. 599, 441 P.2d 111], the court held that substantive use of prior inconsistent statements as proof of the truth of the matters therein stated violates a defendant's Sixth Amendment right of confrontation and cross-examination. (Accord *People* v. *Bradford,* 70 Cal.2d 333 [74 Cal. Rptr. 726, 450 P.2d 46].) Most recently, the principle enunciated in *Johnson* has been extended to prior inconsistent statements given at a preliminary examination. (*People* v. *Green,* 70 Cal.2d 654, 661 [75 Cal.Rptr. 782, 451 P.2d 422].)

*People* v. *Johnson, supra,* reinstated the common law rule prevailing in this area before the adoption of Evidence Code; it does not preclude the use of prior inconsistent statements solely for impeachment purposes. (*People* v. *Green, supra,* 70 Cal.2d 654, 660; *People* v. *Chacon,* 69 Cal.2d 765, 780 [73 Cal.Rptr. 10, 447 P.2d 106].) The Attorney General argues that Prince's statements were used for impeachment only and not to prove the truth of the matters therein asserted. A similar argument was rejected in *People* v. *Hopper.* (Jan. 13, 1969) 268 Cal.App.2d 774, 777 [75 Cal.Rptr. 253] (hearing denied), where the court stated: "Since *People* v. *Johnson* had not yet restricted the scope of Evidence Code section 1235 in criminal cases, there was no apparent reason for the trial judge, as finder of fact, to abstain from considering the statements as substantive evidence against the defendants. We cannot assume that the judge limited this evidence to the narrow purpose of weighing credibility." *Hopper* is indistinguishable from the instant case. We are compelled to assume that the trial judge applied section 1235 of the Evidence Code and treated the prior inconsistent statements as substantive as well as impeaching evidence.

We must therefore consider whether the error was harmless under the applicable harmless error rule of *Chapman* v. *California,* 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824]. (*People* v. *Johnson, supra,* 68 Cal.2d 646, 660.)

There is a reasonable possibility that the substantive use of Prince's inconsistent statements contributed to the conviction of defendant Miles. Intent is an essential element in an attempt crime. Although there was circumstantial evidence of Miles' intent, Prince's admissions removed all doubt as to whether an attempted robbery was intended. When an error is of constitutional dimensions, it is not enough that there is

substantial other evidence to support the conviction. (*People* v. *Hopper, supra,* 268 Cal.App.2d 774, 778.) We conclude that Miles' conviction for attempted robbery must be reversed.

Defendant Miles also contends that his conviction on the count of driving a motor vehicle without the consent of the owner was not supported by the evidence. For the reasons heretofore expressed in Prince's appeal, the contention is without merit. None of Prince's prior inconsistent statements which were used in Miles' trial implicated the latter in the offense of driving a vehicle without the owner's consent. Evidence of Miles' guilt of that offense was substantial.

Next, he contends the trial court erred in failing to make a finding on the allegation that he was armed with a deadly weapon. While the record fails to show a finding on the allegation, inasmuch as the attempted robbery conviction is being reversed, it is unnecessary to consider the contention.

Finally, Miles contends that since it was never shown that he was 18 or older when he committed one of the prior felonies (burglary in Texas), it cannot be considered a felony conviction. Defendant relies on section 603 of Welfare and Institutions Code which requires the court to treat an offender under 18 as a juvenile unless the juvenile court orders that he be prosecuted under general law.[7] However, the test for determining whether a crime committed in another jurisdiction is a prior felony under section 3024, subdivision (g), of the Penal Code is not whether a crime *would* have been punished as a felony in California but that it "*could* have been punished as a felony under the laws of this state." (Italics added.) Thus it is clear that the statutory test was met." (See *In re Horowitz,* 33 Cal.2d 534, 545 [203 P.2d 513].)

As to defendant Miles, the judgment of conviction of attempted robbery is reversed and the judgment of conviction of driving a motor vehicle without the owner's consent is affirmed.

McCabe, P. J., and Kerrigan, J., concurred.

Petitions for a rehearing were denied May 8, 1969, and the petition of appellant Prince for a hearing by the Supreme Court was denied June 18, 1969.

---

[7]The evidence was that defendant was 18 on September 24, 1957, was arrested for burglary in Texas on December 6, 1957, and convicted on May 16, 1958. There is no evidence of when the crime occurred except defendant's testimony that he was 17 at the time.