Filed 8/27/13  In re Ryan P. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re RYAN P., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RYAN P.,<br><br>        Defendant and Appellant. | A135485<br><br>(Sonoma County<br>Super. Ct. No. SJ09122675) |

Ryan P. appeals from the order continuing his status as a ward of the juvenile court.  He contends that one of the two allegations sustained by the court is not supported by substantial evidence.  We conclude this contention is without merit.  He also contends that four of the terms of his probation are constitutionally defective as overbroad or too vague.  We agree in part, and also agree with the Attorney General that the infirmities are correctable.  Thus, we will affirm the dispositional order as it includes modifications to be made by the juvenile court.

**Substantial Evidence**

This is the latest in a series of wardship proceedings going back to 2008 in a different county.  Here, the juvenile court sustained allegations of a subsequent petition in which it was alleged that Ryan had committed robbery, and evaded pursuing police while driving against the flow of traffic.  Ryan presents no challenge to the more serious

1

robbery count, but he does claim that the lesser count does not have the support of substantial evidence.

Ryan was found to have committed what, if he were an adult, would constitute a violation of Vehicle Code section 2800.4, which in pertinent part provides: "Whenever a person willfully flees or attempts to elude a pursuing peace officer in violation of Section 2800.1, and the person operating the pursued vehicle willfully drives that vehicle on a highway in a direction opposite to that in which the traffic lawfully moves upon that highway, the person upon conviction is punishable by imprisonment for not less than six months nor more than one year in a county jail or by imprisonment in the state prison . . . ." The referenced section 2800.1 makes it a misdemeanor for any driver to "willfully flee[ ] or otherwise attempt[ ] to elude a pursuing peace officer's motor vehicle" with an "intent to evade." (Veh. Code, §2800.1, subd. (a).) Ryan insists there is no substantial evidence that it was he who was "operating the pursued vehicle . . . in a direction opposite to that in which the traffic lawfully moves."

Our review of the juvenile court's decision is governed by the same standards applicable to adult convictions. (*In re Matthew A*. (2008) 165 Cal.App.4th 537, 540.) And those standards maximize deference to the trier of fact, which in this case was a very experienced juvenile court commissioner. "To assess the evidence's sufficiency, we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime . . . beyond a reasonable doubt. [Citation.] . . . In applying the test, we review the evidence in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the [trier of fact] could reasonably have deduced from the evidence. [Citation.] 'Conflicts and even testimony [that] is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. . . .' [Citation.] A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" the [trier of fact's decision.] [Citation.] [¶] The same standard governs in cases where the

2

prosecution relies primarily on circumstantial evidence. [Citation.]" (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

The record shows that less than two hours after stealing a car from the robbery victim in Oakland, Ryan and his accomplice, Julius W., were speeding in it on the streets of Oakland when they were spotted by California Highway Patrol Officer Bradford. After observing the car go past a stop sign without slowing, Bradford followed. Once the requested back-up arrived, the two units activated their lights and sirens and gave chase. Bradford learned from his radio dispatcher that the vehicle had been car-jacked. Bradford testified what ensued: "So we continued . . . . southbound on Embarcadero, and it's just a one-lane each direction, and it [the suspect vehicle] accelerated to about 65 miles per hour. And it's kind of a windy road . . . . And it [the suspect vehicle] just had crossed--there was a double yellow line that breaks up the northbound and southbound lane[s], and it just was pretty much just driving southbound on Embarcadero crossing that line as there was turns in the roadway." After being joined by a third unit, Bradford observed the suspect vehicle "went northbound on Kennedy . . . . And then it went on—the wrong way on the 23rd Avenue off-ramp" to Interstate 880. Asked "how do you know that's [*sic*] . . . an off-ramp there on 880?", Bradford answered, "Well, there's signs . . . that say 'wrong way.' " (This was corroborated by photographs shown to Bradford.) Asked, "Did you physically see the [suspect vehicle] go onto the 880?" Bradford responded, "Yes, I did." And then "we kind of all turned off our lights at the same time because we don't chase vehicles on the freeway [going] in the wrong direction." The suspect vehicle traveled seven-tenths of a mile before it stopped. Its occupants fled on foot, and were eventually apprehended. Bradford was unable to determine who was driving the suspect vehicle.

After he was taken into custody, Ryan gave a statement to California Highway Patrol Officer Hartman. According to Ryan, it was Julius who did the driving, although at one point, after the chase began, "he told me to hold the steering wheel while he drive. So I'm holding the steering wheel."

The Attorney General concedes the evidence does not establish Ryan as the actual driver at the time Vehicle Code section 2800.4 was violated, but is sufficient to establish Ryan as an aider and abettor of Julius. We think so too.

The crucial predicate is the nature of the count that Ryan does *not* challenge—the robbery. One of the special consequences of this offense is that it is held to continue past the point at which property is actually taken from another by force or fear. Specifically, the crime of robbery extends through flight or until such time as the robbers have reached a place of temporary safety. (See *People v. Cavitt* (2004) 33 Cal.4th 187, 208.) In this context, the extension obviously encompasses attempted escape or evading capture. (E.g., *People v. Laursen* (1972) 8 Cal.3d 192, 199-200; *People v. Haynes* (1998) 61 Cal.App.4th 1282, 1294; *People v. Miles* (1969) 272 Cal.App.2d 212, 217-218; *People v. Servillo* (1962) 207 Cal.App.2d 296, 299.)

" 'A person who knowingly aids and abets criminal conduct is guilty of not only the intended crime [target offense] but also of any other crime the perpetrator actually commits [nontarget offense] that is a natural and probable consequence of the intended crime. The latter question is not whether the aider and abettor *actually* foresaw the additional crime, but whether, judged objectively, it was *reasonably* foreseeable. [Citations.] Liability under the natural and probable consequences doctrine 'is measured by whether a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted.' [Citation.]

" '[A]lthough variations in phrasing are found in decisions addressing the doctrine—"probable and natural," "natural and reasonable," and "reasonably foreseeable"—the ultimate factual question is one of foreseeability.' [Citation.] Thus, ' "[a] natural and probable consequence is a foreseeable consequence". . . .' [Citation.] But 'to be reasonably foreseeable "[t]he consequence need not have been a strong probability; a possible consequence which might reasonably have been contemplated is enough. . . ." [Citation.]' [Citation.] A reasonably foreseeable consequence is to be evaluated under all the factual circumstances of the individual case [citation] and is a

4

factual issue to be resolved by the jury. [Citations.]" (*People v. Medina* (2009) 46 Cal.4th 913, 920.)

It should be remembered that Ryan participated in the robbery, and that among the property taken from the robbery victim was the vehicle in which Ryan and Julius were riding. The experienced commissioner, sitting as the trier of fact, could determine that Ryan had so acted with the knowledge of the robbery and the intent to facilitate it by assisting Julius to transport the stolen property to safety when they were spotted by Bradford. (See *People v. Houston* (2012) 54 Cal.4th 1186, 1224; *People v. Beeman* (1984) 35 Cal.3d 547, 560.) As an aider and abettor to the robbery, Ryan became and aider and abettor to reasonable foreseeable consequences of the ensuing flight from the officers following the stolen vehicle. Whether such a consequence involved a violation of Vehicle Code section 2800.4 and whether Ryan's assisting Julius in steering the stolen vehicle during the chase constituted aiding and abetting of that second offense, were matters for the commissioner's determination. (*People v. Medina*, *supra*, 46 Cal.4th 913, 920; *People v. Zamudio*, *supra*, 43 Cal.4th 327, 357.) Moreover, in light of Ryan's past history, his claim of complete lack of knowledge and noninvolvement with Julius's criminal acts did not necessary command credulity. The evidence is not overwhelming, but we cannot conclude as a matter of law that it is insufficient.

### The Probation Conditions

At the hearing conducted on May 7, 2012, the juvenile court stated its disposition as follows:

"[T]he placement order is continued . . . . All previously ordered terms and conditions of probation to continue, including drug and search.

"He's not to drive unless licensed and insured, or be in anyone's care unless invited by the owner.

"Not to associate with Julius [W.]. Not to have any contact with the [robbery] victim, Mr. Alazzani. [¶] . . .[¶]

"One last thing, Ryan.. You're not to be in any criminal street gang, or associate with anyone you know is a member of a criminal street gang or should reasonably know

5

is a member of a criminal street gang. You are not to wear any gang clothing, colors, or emblems, or get any tattoos or piercings, and not possess any burglary tools or graffiti materials."

Ryan attacks four of these conditions as impermissibly vague and/or overbroad, thus allowing review of them even though he did not object when the conditions were imposed. (See *In re Sheena K.* (2007) 40 Cal.4th 875, 887-889.) Specifically, Ryan argues that the prohibitions on gang clothing, gang emblems, burglary tools, and graffiti materials transgress constitutional limits because they do not include a requirement that Ryan have knowledge of their criminal nature or their association with criminal street gangs. The Attorney General largely agrees that this argument is sound (see *People v. Leon* (2010) 181 Cal.App.4th 943, 951), but asserts that any problem can be cured by modifying the conditions to impose a knowledge requirement. Ryan is agreeable to modification by this court.

Ryan then claims the same problem also infects the no-association condition. Here, he is objecting not to the court's orally-pronounced conditions quoted above, but the condition that appears in the court's minutes: "Minor is not to be a member of, or associate with, any person the child knows, or should reasonably know, to be a member or to be involved in the activities of a criminal street gang." Ryan insists that the addition of the word "activities" introduces a degree of ambiguity and vagueness not present in what the court actually said.

It is unfortunate that there are discrepancies between the reporter's and the clerk's transcripts. These are almost certainly the result of a momentary lapse or inattention by an experienced bench officer who is undoubtedly aware of constitutional limitations when it comes to framing conditions of probation. It is this experience that we are certain explains why the minutes reflect a knowledge requirement in the no-association condition quoted in the preceding paragraph. And why the graffiti condition as expressed in the minutes—"Minor is not to possess any graffiti materials, or graffiti-related paraphernalia, including but not limited to spray paint, paint or ink markers, metal scribers, aerosol nozzles, or other material used to deface property"—seems perfectly adequate.

6

Ryan and the Attorney General go back and forth quoting rules of construction as to whether the oral or the minutes versions of the conditions shall prevail. It is important to remember that the important function of either version is to provide notice to Ryan of what he is prohibited from doing. It seems a matter of common sense that a teenager is less likely to remember words spoken a year ago. And at this stage, we wonder how modifications of oral pronouncements are to be made, or communicated to Ryan, if not in written form. Accordingly, we believe the modifications should be made by the juvenile court in light of the views expressed here, assisted by the court's considerable experience. A copy of the revised conditions of probation must then be provided to Ryan.

## DISPOSITION

The dispositional order is modified to provide for a revised expression by the juvenile court of the conditions of probation. As so modified, the order is affirmed.

_____
Richman, J.


We concur:


_____
Kline, P.J.


_____
Haerle, J.

7