[Crim. No. 1469. First Appellate District, Division One.—August 24, 1928.]

THE PEOPLE, Respondent, v. LORENA WILSON, Appellant.

Joseph M. Trusty and Frank J. Golden for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

KNIGHT, J.—The appellant, Lorena Wilson, was charged jointly with her husband, Harry Wilson, and one Russell Griffin, with the crime of robbery alleged to have been committed in San Francisco on September 21, 1927. She was arrested in Oakland on December 1, 1927, and tried separately in February, 1927, her co-defendants having been previously sentenced to the state prison on another charge. The jury found her guilty of robbery in the second degree and following the denial of motions for a new trial and probation, she was sentenced to imprisonment in the state

prison. Thereupon she took this appeal from the judgment of conviction and the order denying her motion for a new trial.

The first point made is that the verdict is not supported by the evidence and is contrary to law. The record discloses that shortly prior to the hour of 8 o'clock on the evening of the robbery appellant's co-defendant Russell Griffin, accompanied by another man and a woman, drove in an automobile to a grocery store on the corner of Noriega Street and Twentieth Avenue, San Francisco, and while his companions waited outside near the front of the store, Griffin entered the store, armed with a pistol, and after threatening Miss Rose O'Connor, the manager of the store, who was alone therein at the time, stole the money that was in the cash register and then made his escape by driving away with his companions. Direct evidence was introduced to prove that appellant and her husband were the other two persons with Griffin at the time he perpetrated the crime; and the prosecution introduced evidence of certain circumstances which it claimed justified the conclusion that appellant aided and abetted in its commission, and the jury so found. These circumstances, briefly stated, were as follows: About dusk on the evening of the robbery a Mrs. Woods, living on Twentieth Avenue about six houses distant from the grocery store and on the same side of the street therewith, was standing in front of her home watering the lawn, and while doing so a Chrysler coupe approached slowly with only one headlight burning. She saw that it was occupied by two men and a woman, the latter being seated between the men; and her attention was particularly attracted to them because her husband was employed by the agency handling that make of car and when she first saw the coupe approach she thought that one of its occupants was her husband and that he was driving home in one of the agency's cars; but as the parties came closer to her she saw that her husband was not one of them. The coupe passed within three and one-half or four feet of her, "hugging" the curb, and then proceeded on along Twentieth Avenue directly in front of the grocery store, around the corner into Noriega Street and circled the block. This maneuver was repeated three times. The window of the coupe was down and conse-

quently each time the parties drove by Mrs. Woods she was able to get a good look at them. On the fourth trip around the block the coupe drew in still closer to the curb toward Mrs. Woods and as it passed slowly by her one of the men curtly told her to "go into the garage and mind her own business." In compliance with such command she went into the garage but looked back out through the glass door and saw the coupe continue on slowly along Twentieth Avenue until it reached a point about twenty feet the other side of Noriega Street. It stopped there and the two men alighted; whereupon Mrs. Woods hurried to the phone to notify the police, but being unable to obtain telephonic connection with the department because her party line was "busy" she immediately returned to the front yard and stood behind the trunk of a tree where she could observe the subsequent movements of the coupe and also the interior of the grocery store through its front windows. She testified that after both men got out of the coupe one of them entered the store while the other stood near a street light directly in front of the store; that she saw the man in the store commit the robbery and then run out, join the other man, and that both men then jumped into the coupe, the engine of which had been kept running, and drove away; and that while all of this was going on she had a clear view, through the rear window of the coupe, of the woman seated therein. Mrs. Woods afterward, at the Oakland jail and at the trial, positively identified appellant as the woman occupant of the coupe. Additional evidence was adduced tending to show that appellant made more or less resistance at the time of her arrest, and, also, that she had contradicted herself in some respects regarding the whereabouts of her husband and as to other pertinent matters.

Appellant's defense depended entirely upon her own testimony, no other witness being produced in her behalf; and her testimony on direct examination was to the effect merely that she lived with her husband and three children, and that Griffin boarded with them; that she was not present in the coupe at the time of the robbery as claimed by Mrs. Woods and that she did not know her husband had been doing wrong until he was arrested.

Section 31 of the Penal Code declares in part that all persons concerned in the commission of a crime, whether they directly commit the act constituting the offense or aid and abet in its commission, or not being present have advised and encouraged its commission, are principals in any crime so committed; and the contention appellant makes regarding the evidence is that even assuming that she was present at the time and place of the robbery, there was no proof introduced to establish the fact that she aided and abetted in the commission of the crime. ▮ We are unable to agree with this contention, for it is well settled that the question of whether or not a person who is shown to have been present at the time and place of the commission of a crime has aided and abetted therein is one of fact for the jury to decide from all the circumstances proved (*People* v. *Woodward,* 45 Cal. 293 [13 Am. Rep. 176]; *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861]; *People* v. *Wilson,* 135 Cal. 331 [67 Pac. 322]); ▮ and in our opinion the circumstances hereinabove narrated are legally sufficient to warrant the conclusion that appellant had previous knowledge of what was about to transpire and that her object in being present was to divert any suspicion as to their purpose, or to serve as a lookout and to give warning of the approach of anyone seeking to interfere with their enterprise, or to take charge of the automobile, keep the engine running, and to give direct aid to the men in making their escape. Any one of the purposes mentioned would be sufficient upon which to base the reasonable inference that she was aiding and abetting in the commission of the robbery.

Furthermore, it has been held that the unexplained presence of a person at the scene of the commission of a crime may be deemed a circumstance tending to show complicity in the transaction (*People* v. *Woodward, supra*). Here appellant denied that she was present at the scene of the crime, but the jury, by its verdict, declared that she was; consequently, in that state of her testimony, her presence was unexplained and may have been taken by the jury as an additional circumstance tending to show complicity in the crime. The case last cited is one upon which appellant relies to support her contention that the evidence is insufficient. But, aside from the declaration of the legal

principle above referred to, we think the case is of little value here because an analysis of the decision shows that it goes no further than to restate in negative form the provisions embodied in section 31 of the Penal Code to the effect that the mere presence of a person at the time and place of the commission of a crime is not legally sufficient to sustain a conviction unless it be found as a fact that he aided and abetted in the commission thereof; and, as the decision in the case declares, it is ''for the jury to decide from all the facts proved, whether he aided, assisted, or abetted in the perpetration of the offense.'' In other words, an affirmative finding on the elements mentioned may be based upon the circumstances surrounding the person's presence. Therefore, it would appear that the conclusion reached in the present case is not in conflict with any of the rules stated in the case cited.

■. Appellant assigns as error certain rulings of the trial court and the conduct of the district attorney in relation to the introduction in evidence of an envelope and a pistol which were found in appellant's possession at the time of her arrest, the circumstances leading up to and attending which were as follows: At the time the robbery occurred the Wilsons and Griffin resided on Twenty-third Avenue in Oakland, and they continued to live there until the following month, October, 1927, at which time they moved to San Francisco, where they resided until the time of appellant's arrest. For several days preceding appellant's arrest the Oakand Police Department had under surveillance a house on Twelfth Street, knowing that a government letter from the War Veterans' Bureau addressed to Griffin was about to be delivered there, and the day after it was delivered appellant called to get it. As she left the premises the police followed her for some distance and she finally ran into the doorway of an apartment house. As the officers were about to follow her in she came out of the door carrying a vanity case which was partly opened. After a brief struggle she was placed in the police automobile and one of the officers asked her to hand over the vanity case, which she refused to do; and during the struggle for it she threw it out of the machine. It was picked up and among the articles found therein was the government envelope addressed to Griffin and a Mauser

pistol fully loaded. The particular portions of the testimony given by the police detective on direct examination as to the struggle for the vanity case and the finding of the envelope and pistol therein went before the jury without objection, as did the further testimony given by the same officer to the effect that they asked appellant "why she carried the gun and she said she carried the gun for her protection"; but upon introducing the envelope and pistol in evidence appellant objected thereto, and her objections were overruled as to the admission of the envelope, but sustained as to the pistol. Thereafter and on cross-examination of appellant the district attorney persisted in asking appellant, despite the repeated objections of appellant, which the court consistently sustained, why she had stated to the officers that she carried the pistol for protection. The district attorney also touched upon the same matter in an indirect manner during his argument to the jury. Therefore, at the conclusion of the arguments the trial court, through abundance of caution, instructed the jury that "all objections to questions asked by the district attorney with reference to the possession by the defendant" of the pistol had been sustained and all testimony given with reference thereto stricken out; and in addition the court admonished the jury "to disregard and discard from their minds any and all ideas and impressions and convictions that the production of such weapon in court has or may have formed in the minds of the members of the jury"; and to disregard also "any and all impressions, ideas or convictions which form from any and all questions and answers of the defendant and the remarks of the district attorney in reference to the possession by the defendant of said revolver at the time of her arrest." It is evident from the foregoing condition of the record that appellant was not injured by the rulings of the trial court regarding her reason for carrying the pistol because the objections made with reference thereto were sustained; nor can it be said that the ruling as to the reception in evidence of the sealed envelope addressed to Griffin, if erroneous, operated to her prejudice because, as stated, the officer had already testified, without objection on her part, that such envelope was found in her possession; ■ and conceding that the conduct of the district attor-

ney in repeatedly asking appellant her reason for carrying the pistol, after the court had ruled such testimony inadmissible, and in adverting to the same matter in his argument is subject to just criticism, cannot be held to have constituted reversible error because during neither the cross-examination nor the argument did appellant assign the same as misconduct. ■ The only assignment of misconduct made related to the district attorney's statement to the jury, during his argument, that appellant saw Griffin going into the store with the pistol and committing the robbery; and we think that such inference was fairly deducible from the evidence and that therefore the statement objected to was not improper.

■ Appellant also complains of the giving of four instructions, the first two of which relate to the degrees of robbery. Appellant claims that the implied meaning of said instructions was that she was present at the scene of the crime. Standing alone the instructions might give rise to such implication, but the court elsewhere in its charge instructed the jury in substance that appellant should not be found guilty at all unless the jury was convinced to a moral certainty and beyond a reasonable doubt that a robbery was committed as alleged in the information and that appellant was present and aided and abetted therein, as defined in said instructions; consequently when the instructions objected to are read in connection with the others constituting the court's charge the implication imputed to them entirely disappears.

■ The third instruction objected to apparently contained a typographical mistake, the term "a defendant" being used instead of "the defendant"; and appellant claims that as a result of such mistake the jury was in effect informed that if it found that either of her co-defendants aided and abetted in the commission of the robbery it was their duty to find appellant guilty thereof. The very next instruction quoted in appellant's brief clearly shows, however, that the jury could not have been misled by the typographical error. It reads as follows: "If the jury is convinced to a moral certainty and beyond a reasonable doubt that a robbery was committed as alleged in the information and that the defendant aided and abetted as defined in these instructions, in the commission of the

acts leading up to and resulting in such robbery, and that the defendant was actually present at the scene of the commission of the robbery, or at such convenient distance as to be able to come to the immediate assistance of her associates, if required, or to watch to prevent surprise or the like, at the time and place and on the occasion when it is alleged and claimed that such robbery was committed and that she then and there directly committed the acts constituting the offense, or aided and abetted in its commission, as defined in these instructions, or, being present, advised and encouraged in its commission, then it is your duty to return a verdict of guilty against defendant.''

Appellant also attacks the foregoing instruction upon the ground that there is no evidence to support any of the elements of the crime therein set forth. We have already discussed the evidence and, as stated, the reasonable inferences to be drawn therefrom are legally sufficient in our opinion to establish the necessary elements constituting the crime of which appellant was convicted.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Campbell, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on September 22, 1928.