[Crim. No. 1317.   Fourth Dist.   Sept. 25, 1957.]

THE PEOPLE, Respondent, v. JAMES GIBSON, JR., Appellant.

*Assigned by Chairman of Judicial Council.

Louis S. Katz, under appointment by the District Court of Appeal, and Gostin & Katz for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

MUSSELL, J.—Appellant was found guilty by a jury of "Theft and Unlawful Taking of a Vehicle as Charged in the Information." He was sentenced to the state prison for the term prescribed by law and appeals from the judgment of conviction, claiming that the evidence was not sufficient to support the verdict and that the court erroneously admitted into evidence the hearsay testimony of a police officer and of an assistant probation officer of the county of San Diego.

On October 7, 1956, at about 5 p. m., Corporal Jerry L. Faubian drove his 1953 Ford car into the Associated gas station at Torrey Pines or La Jolla Junction in San Diego. The corporal purchased gas for his car and then drove it around to the side of the men's rest room. He then got out of the car, leaving the ignition key in it so that his friend, James Falls, who was with him and remained in the car, could listen to the radio. Faubian went into the rest room and when he came out, approximately five minutes later, his car was missing. After Faubian entered the rest room, Falls got out of the car, leaving the ignition key in it, and walked around the corner to the door of the rest room. From this position he could not see the car and he remained there for about two minutes. When Faubian came out of the rest room, both men went around the corner to the place where the car had been left and found that it had been stolen.

Leon B. Andrews, who was employed at the gas station, testified he came to work at approximately 10 a. m. on the morning

of October 7, 1956, and saw the defendant and his companion, Emmit Miller, in the area; that defendant asked him to help him push his truck and that the truck was moved to the rear of the station about noon; that defendant and Miller were in and about the station until approximately 5 o'clock in the afternoon; that between 4 and 5 p. m. defendant and Miller walked in front of him between the service station and the rest rooms and that was the last time he saw them; that within 10 minutes thereafter Faubian and Falls reported to him that the Ford car had been stolen.

At about 3:40 a. m. on October 8th, Police Officers Sawchik and Richter, of the San Diego Police Department, were checking a vehicle which was parked in an unusual location near Commercial and 30th Streets in San Diego, when a Ford approached from the north. The defendant and Miller were in the car and as they passed, the defendant turned around and looked at the officers. The officers then returned to their car and started in pursuit of the Ford. They overtook it within a short distance and while it was still moving, the right door opened and the defendant jumped out. He tripped and fell to the pavement, got up and ran to the south side of the street, against a fence and was there taken into custody by Officer Sawchik. A second or two after the defendant left the Ford, the left door opened and Miller got out, ran down an alley, leaving the car in motion. Officer Richter jumped from the police car and stopped the Ford by pulling the emergency brake. He then pursued Miller down the alley and took him into custody. After being arrested, both defendant and Miller at first denied that they had been in the Ford car. Defendant stated he was crossing the street and the driver of the Ford had tried to run him down and he was getting out of the way of the car. Miller stated that he was running away from somebody who was trying to rob him and was threatening him with a knife. On October 8th, while Officer Mihelcich was handcuffing defendant and Miller together, taking them to court for arraignment, Miller stated he wanted to change his plea and wanted to plead guilty to car theft charges and said, "Well, I wanted to tell you we both took the car." Defendant remained silent when this statement was made.

At the trial, Miller, who was called as a witness for the prosecution, testified that he and the defendant arrived at La Jolla Junction Saturday night in a truck driven by defendant, who was delivering it to Chula Vista; that the truck

broke down and they got a ride into San Diego, where they tried unsuccessfully to find defendant's foreman; that they stayed all night in San Diego and on the following morning returned to get the truck but could not get it started; that they stayed at La Jolla Junction for a few hours, drinking most of the time; that after waiting for about two hours for someone to come and get them, the defendant staggered toward the street as if he was going to hitch hike; that he, Miller, got into the Ford, which was at the station, and drove it about 200 yards to where the defendant was; that he picked him up and they drove into San Diego; that at the time he was arrested, he was on his way to his aunt's house and jumped from the car while it was in motion because he was excited.

Mr. Goodwillie, an assistant probation officer, testified that he had a conversation with Miller relative to his activities at or near the La Jolla Junction, in which Miller stated he "was not basically guilty of taking the car, although he pleaded guilty, because he had gone along with Gibson, who had actually driven the car from the scene, and he, Miller was intoxicated and not knowing what he was doing, went along."

Defendant Gibson testified that on October 7th he and Miller were delivering a truck to Chula Vista; that it broke down and ran out of gas and was pulled into a service station; that they left the truck and went into San Diego, where they stayed all night and that on the following morning they went back to the gas station; that he did not take the Ford car and was out in the street when Miller came by with it; that he got in and they drove to San Diego.

Defendant first attacks the sufficiency of the evidence to support the verdict in that it was not shown that he participated in the taking of the car. This contention is not tenable. The rule applicable is stated in *People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778], as follows:

"The rule applicable where there is evidence, circumstantial or otherwise, that a crime has been committed and that the defendant was the perpetrator thereof, has been many times reiterated by the reviewing courts of this state as follows: The court on appeal 'will not attempt to determine the weight of the evidence, but will decide only whether upon the face of the evidence it can be held that sufficient facts could not have been found by the jury to warrant the inference of guilt. For it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the

jury, which has been approved by the trial court, can be set aside on appeal upon the ground' of insufficiency of the evidence, 'it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below. The determination of a charge in a criminal case involves proof of two distinct propositions; First, that the offense charged was committed, and second, that it was perpetrated by the person or persons accused thereof. . . . We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict.' ''

In *People* v. *Wissenfeld,* 36 Cal.2d 758, 763-764 [227 P.2d 833], the court said:

''While the mere possession of stolen property is not alone sufficient to sustain a conviction of grand theft (*People* v. *Haack,* 86 Cal.App. 390 [260 P. 913]), such possession plus 'slight corroborative evidence of other inculpatory circumstances' will suffice. [Citations.] The time period between the date of the theft and appellant's arrest when in possession of the stolen car—some 25 days—was but another circumstance for the jury's consideration in determining the matter of his guilt in the light of the evidence that he had been driving the car on various business and social trips during that period. (*People* v. *Miller, supra,* 45 Cal.App. 494, 496-497 [188 P. 52].) Appellant's reliance on the case of *People* v. *Zervas,* 61 Cal.App.2d 381 [142 P.2d 946], is of no avail, for there it was only held that defendant's mere occupancy of a stolen car as a passenger but without other suspicious or incriminatory circumstances was insufficient to sustain his conviction.''

In *People* v. *Zabriski,* 135 Cal.App. 169, 172 [26 P.2d 511], it is stated:

''While the possession of stolen property alone is not sufficient to raise an inference of guilt, such possession under the circumstances shown here, coupled with the denials of both parties that they knew each other or had been in the car, and their flight from the car, sufficiently justified the conclusion of guilt reached by the jury. False statements intended to conceal connection with criminal acts tend to show consciousness of guilt (*People* v. *Cole,* 141 Cal. 88 [74 P. 547]), as also does flight (*People* v. *Hall,* 199 Cal. 451 [249 P. 859]).''

The question of whether the defendant Gibson who was shown to have been present at the time and place of the crime,

and in the stolen car, aided and abetted in the commission of the theft charged was a question of fact for the jury to decide from all the circumstances proved. (*People* v. *Wilson,* 93 Cal.App. 632, 636 [269 P. 951].) ▮ Defendant Gibson was at the place where the Ford was taken and was seen there by the service station attendant about 10 minutes before the theft. When pursued by the officers, he jumped out of the car and attempted to escape. He gave false statements to the officers immediately after his arrest and failed to deny Miller's statement made in his presence to the effect they both had taken the car. The evidence was sufficient to support the verdict of the jury.

▮ Defendant claims that the prosecution was bound by the testimony of Miller that he, alone, took the car. However, this testimony did no more than raise a conflict in the evidence presented by the prosecution and the prosecution was not bound by it. (*People* v. *Marks,* 111 Cal.App.2d 357, 359 [244 P.2d 771].)

▮ Defendant's claim that the court erroneously admitted hearsay testimony of Officer Mihelcich and Probation Officer Goodwillie is likewise without merit. Miller was a prosecution witness and testified that he, alone, took the car; that the defendant had nothing to do with the theft. Officer Mihelcich took the stand and testified as to a conversation with Miller in which he denied any knowledge of the Ford car and stated, when the officers arrested him, he was merely walking up the sidewalk and did not know anything about an automobile. This testimony was admissible, for a party who is taken by surprise in the testimony of a witness produced by him may be permitted to impeach the witness by proof of inconsistent statements which were made by him at another time and place. (*People* v. *Wright,* 26 Cal.App.2d 197, 206 [79 P.2d 102] ; *People* v. *LeBeau,* 39 Cal.2d 146, 148 [245 P.2d 302].)

▮ Goodwillie's testimony that Miller told him, out of the presence of defendant Gibson, that he was not basically guilty of taking the car, although he pleaded guilty, because he had gone along with Gibson who had actually driven the car, was admitted without objection by the defense. No motion to strike it was made and under the circumstances the court did not err in allowing it to be received. (*People* v. *Cole,* 141 Cal. 88, 92 [74 P. 547] ; *People* v. *Bennett,* 119 Cal.App.2d 224, 226 [259 P.2d 476].)

Judgment affirmed.

Griffin, Acting P. J., concurred.