[Civ. No. 52851. First Dist., Div. Two. June 16, 1982.]

In re ROBERT V., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent, v.
ROBERT V., Defendant and Appellant.

818

**COUNSEL**

Alan M. Caplan, under appointment by the Court of Appeal, and Bushnell, Caplan, Fielding & Rudy for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, William D. Stein, Assistant Attorney General, Gloria F. DeHart and Mary A. Roth, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

LEVINS, J.*—On March 24, 1981, a petition was filed under Welfare and Institutions Code section 602 alleging that appellant Robert V., a/k/a Daniel L., had unlawfully taken an automobile (Veh. Code, § 10851), a felony, and had carried a loaded firearm in that vehicle (Pen. Code, § 12031, subd. (a)), a misdemeanor. Robert was detained and on March 31, 1981, the parties stipulated that the contested jurisdictional hearing be heard by a juvenile court referee. On April 10, 13, and 14, the matter was heard and on April 21, 1981, the referee found that appellant was a person described in section 602 of the Welfare and Institutions Code, that the allegations as to the auto theft charge, a felony, were true, and that the firearm charge was not true. The matter was continued for disposition with the notation, "[m]isdemeanor or felony to be determined at the time of dispositional hearing."

---

*Assigned by the Chairperson of the Judicial Council.

On April 21, 1981, the matter came on for disposition and the court found "[t]hat wardship be declared and the minor committed to the California Youth Authority for a period not to exceed three (3) years with 45 days credit for time served and good time based on [¶] Petition filed 3/24/81 VC10851 *felony* in Ct I to run concurrent with time still owed on CYA commitment . . . ." (Italics added.)

Appellant did not apply for a rehearing. He filed timely notice of appeal and request for appointment of counsel.

Gary Walstrom testified that on Sunday, March 22, 1981, at approximately 6 p.m., he parked his beige 1967 Volkswagen (VW) on Pearl Street. He locked it after closing the windows and went to his apartment, taking the keys with him. Early Monday morning, Officer Schneider notified him that his car had been stolen; and when Walstrom went to his parking place on Monday afternoon, the car was gone. He had given no one permission to take it and had never seen appellant before trial.

Officer Mino, a uniformed policeman and in a marked police car driven by Officer Mroz, testified that they were on patrol around 12:30 a.m. on March 23, 1981, when he saw a beige late 60's model VW run a red light. Mroz turned on the siren and red light, the driver of the VW accelerated to 50 or 60 miles an hour and ran every stop sign for 5 or 6 blocks before it crashed into a parked car. Someone on the passenger's side threw out a rifle. De La Rosa and Rosario got out on the passenger's side and a third male got out on the driver's side. These three were arrested within 10 feet of the car. Mino saw appellant run south from the scene with Mroz running after and catching up to him. Mino was certain that appellant was the driver who was chased by Mroz. He discovered appellant's true name later at the hospital.

Mroz testified that at the crash, he set his eyes on the driver who got out of the car and began to run. Mroz chased him on foot, caught him, pushed him into a fence, threw him to the ground and handcuffed him. He identified appellant as the driver.

Appellant testified that he and Rosario were walking on the street around midnight when a VW with Sanchez driving and De La Rosa, a passenger, passed them. Sanchez agreed to give them a ride to the bus stop. Robert got in the left back seat and Rosario in the right back seat. As they approached Robert's destination, he heard police sirens, San-

chez stepped on the gas; and after approximately six blocks, the car crashed into a parked auto. Sanchez got out of the car first with both Sanchez and appellant running. Appellant was caught and struck by Mroz' flashlight, causing a cut. He told the police that Sanchez was driving and that there was no rifle. He gave a false name in the hope of concealing the episode from his father. He did not know the car was stolen.

Rosario testified substantially the same. He said Sanchez was driving, offered them a ride, they didn't know the car was stolen and he never saw a rifle. He jumped out the rear passenger window and a police officer knocked him to the floor (*sic*).

### Appellant's Contentions

I. There was insufficient evidence to sustain his conviction.

II. The juvenile court improperly sentenced him to the California Youth Authority.

A. There was no court reporter at the dispositional hearing.

B. The court erred in not declaring whether the theft offense was a felony or misdemeanor.

### I.

The jurisdictional finding is supported by substantial evidence.

In *People* v. *Reilly* (1970) 3 Cal.3d 421, at page 425 [90 Cal.Rptr. 417, 475 P.2d 649], our high court said that: "The test on appeal is whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citation.] The appellate court must determine whether a reasonable trier of fact could have found the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. [Citations.]"

*People* v. *Jonnson* (1980) 26 Cal.3d 557, at page 576 [162 Cal.Rptr. 431, 606 P.2d 738], states that: "Similar language appears in *People* v. *Reyes* (1974) 12 Cal.3d 486, 497 ...; *In re Roderick P.* (1972) 7

Cal.3d 801, 808-809 ...; *People* v. *Bassett* (1968) 69 Cal.2d 122, 139 ...; and many other cases. (See *In re Frederick G.* (1979) 96 Cal.App. 3d 353, 363 ... and cases there cited.) Evidence, to be 'substantial' must be 'of ponderable legal significance ... reasonable in nature, credible, and of solid value.' (*Estate of Teed* (1952) 112 Cal.App.2d 638, 644 ...; *People* v. *Bassett, supra,* 69 Cal.2d 122, 139.) [¶] In determining whether a reasonable trier of fact could have found defendant guilty beyond a reasonable doubt, the appellate court 'must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citations.]"

"We must make all reasonable inferences to support the findings of the juvenile court and we must review the record in the light most favorable to the juvenile court order. [Citation.]" (*In re Charles G.* (1979) 95 Cal.App.3d 62, 67 [156 Cal.Rptr. 832].) "The testimony of a single witness is sufficient to uphold a judgment even if it is contradicted by other evidence, inconsistent or false as to other portions. [Citations.]" (*In re Frederick G.* (1979) 96 Cal.App.3d 353, 366 [157 Cal.Rptr. 769], cert. den. 446 U.S. 934 [64 L.Ed.2d 787, 100 S.Ct. 2150].)

▪ Here both police officers testified that appellant was driving a recently stolen automobile; and when it struck the parked automobile, appellant tried to flee and was stopped by force. Appellant said another was driving and gave a false name. The flight upon detection or apprehension is sufficient to show specific intent to deprive the owner of possession. (See *People* v. *Miles* (1969) 272 Cal.App.2d 212, 218 [77 Cal.Rptr. 89]; *People* v. *Williams* (1968) 264 Cal.App.2d 885, 887-888 [70 Cal.Rptr. 882]; *People* v. *Parmenter* (1960) 186 Cal.App.2d 509, 511 [9 Cal.Rptr. 135]; *People* v. *Gibson* (1957) 154 Cal.App.2d 67, 71-72 [315 P.2d 442].) The specific intent to deprive the owner of possession of his car may be inferred from all the facts and circumstances of the particular case. (See *People* v. *Superior Court* (*Kiefer*) (1970) 3 Cal.3d 807 [91 Cal.Rptr. 729, 478 P.2d 449, 45 A.L.R.3d 559]; *People* v. *Brown* (1969) 1 Cal.App.3d 161 [81 Cal.Rptr. 401]; *People* v. *Gibson* (1944) 63 Cal.App.2d 632 [146 Cal.Rptr. 971].) Once the unlawful taking of the vehicle has been established, possession of the recently taken vehicle by the defendant with slight corroboration through statements or conduct tending to show guilt is sufficient to sustain a conviction of Vehicle Code section 10851. (See *In re Jonathan M.*

(1981) 117 Cal.App.3d 530, 537 [172 Cal.Rptr. 833]; *People* v. *Ford* (1965) 234 Cal.App.2d 480, 495 [44 Cal.Rptr. 556].)

## II.

The juvenile court properly sentenced appellant to the California Youth Authority (CYA).

■ A. The dispositional hearing did not require a court reporter.

By stipulation, appellant's contested and reported jurisdictional hearing was before a referee and his dispositional hearing was also before that same referee, without an official court reporter. Appellant was advised of his right to a rehearing but did not request one. The dispositional order became effective upon being signed by the judge of the juvenile court on April 23, 1981.

Welfare and Institutions Code section 677 provides, in effect, that any hearing by a juvenile court referee *may* be recorded by an official reporter at the court's discretion and under Welfare and Institutions Code section 252, the minor or his parent or guardian has the right to apply for rehearing within 10 days after the service of a written copy of the order or findings of the referee. If the proceedings before the referee have not been taken down by an official reporter, the application must be granted as a matter of right. (*In re Gregory M.* (1977) 68 Cal.App. 3d 1085, 1092 [137 Cal.Rptr. 756].)

In *In re James R.* (1978) 83 Cal.App.3d 977 [148 Cal.Rptr. 145], no reporter was present at any proceedings in the matter heard by the referee and the minor failed to exercise his right to a rehearing which would have been heard de novo and with an official reporter pursuant to Welfare and Institutions Code section 677. That court held that the failure to exercise his right to rehearing constituted a waiver of the right to complain of the lack of a transcript on appeal and was therefore not a denial of equal protection. (See also *In re Drexel F.* (1976) 58 Cal.App.3d 801, 804 [130 Cal.Rptr. 253].)

The court in *In re David T.* (1976) 55 Cal.App.3d 798 [127 Cal.Rptr. 729], in a hearing before the juvenile judge, required an official reporter and the substitution of a reporter, who did not qualify as an official reporter within Government Code section 69942, deprived the juvenile of a proper record for appeal. *In re Steven B.* (1979) 25

Cal.3d 1 [157 Cal.Rptr. 510, 598 P.2d 480], and *In re Ray O.* (1979) 97 Cal.App.3d 136 [158 Cal.Rptr. 550], involved hearings before juvenile judges and the requirement of official reporters and transcripts of the proceedings.

Here appellant had the right to a reported hearing, if he had followed the procedure available to him; but he chose not to exercise his right. Therefore, there was no error in not providing an official reporter or a transcript.

B. The court properly determined the vehicle theft to be a felony.

At the termination of the jurisdictional hearing, the referee postponed the determination of whether the offense was to be classified as a misdemeanor or a felony. At the dispositional hearing on April 23, 1981, the signed "Findings and Order" specify that "Petition filed 3/24/81 VC10851 felony in Ct I to run concurrent with time still owed on CYA commitment." This is unlike *In re Dennis C.* (1980) 104 Cal. App.3d 16 [163 Cal.Rptr. 496], where there was an official transcript but no explicit finding; and that court, because of the possible oversight, remanded for clarification whether the crime was a felony or a misdemeanor.

In *In re Ricky H.* (1981) 30 Cal.3d 176, 182-183 [178 Cal.Rptr. 324, 636 P.2d 13], our high court reviewed the limitations on a superior court's discretion to commit to CYA pursuant to Welfare and Institutions Code section 734, reiterated the statutory scheme and stated (at p. 183): "there is no absolute rule that a Youth Authority commitment should never be ordered unless less restrictive placements have been attempted. [Citations.]" "We recognize 'the general rule that an appellate court will not lightly substitute its decision for the disposition ordered by the juvenile court.' [Citation.]" (*In re Todd W.* (1979) 96 Cal.App. 3d 408, 416 [157 Cal.Rptr. 802] and cases there cited.)

Here, the court declared wardship and committed appellant to CYA for a period not to exceed 3 years, with 45 days' credit for time served and good time. The court found "[t]hat [appellant] had been tried on probation and failed to reform; that the mental and physical condition and qualifications of the [appellant] are such as to render probable that he will be benefited by the reformatory educational discipline and other treatment provided by the CYA."

Under the facts, circumstances and findings, the court below did not abuse its discretion in committing appellant to the CYA.

The order is affirmed.

Grodin, P. J., and Rouse, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 11, 1982. Bird, C. J., was of the opinion that the petition should be granted.