Filed 4/17/13  P. v. James CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEA, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D062415 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CE318583) |
| KENT JAMES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Lantz Lewis, Judge.  Affirmed.

A jury found Kent James guilty of three counts each of burglary (counts 1, 3 & 5) and petty theft with a prior (counts 2, 4 & 6) related to three separate shoplifting incidents that occurred in early February 2012.  James later admitted various enhancement allegations related to earlier crimes.  James appeals, claiming the evidence did not support his convictions on counts 1 and 2 in connection with the first shoplifting incident. We disagree.

FACTUAL BACKGROUND

On the morning of February 1, 2012, a store employee heard a noise coming from the over-the-counter medicine aisle of the Rite Aid store on Second Street in El Cajon. The employee testified she checked the ceiling mirrors and saw a female, later identified as Jeannette Lynch, putting over-the-counter medication into her purse. The employee confronted Lynch and told her to return all of the medication. As the employee escorted Lynch out of the store, the employee told Lynch if she returned the employee would call police.

A surveillance tape from the store revealed that James had entered the store about 10 seconds before Lynch. James then went to the electronics aisle, at the opposite end of the store from the over-the-counter medicine aisle, where he conversed with another store employee about a "SIM card" for his phone. That employee testified James kept repeating the same thing over and over as he tried to explain to the employee what a "SIM card" was and did, even after the employee confessed not to understand. When that employee offered to find another store employee who might know more about SIM cards, James said "No, that's okay" and left the store shortly after Lynch.

On February 13, James and Lynch were together at a Rite Aid store in Rancho San Diego. A store employee testified he confronted the two as they walked around the registers toward the front door of the store. The man, later identified as James, walked a few feet ahead of Lynch. The store employee saw Lynch's large purse bulging and when

he got closer, the employee could see over-the-counter medicine and other Rite Aid merchandise in Lynch's purse.

The employee testified he told James and Lynch to stop, but they kept walking and left the store. As they left, James and Lynch told the employee it was Lynch's "stuff." Once outside, Lynch ran and jumped in a car after the employee said he was going to call police. James, however, casually walked to the car and told the employee, "Do whatever you got to do," as the employee demanded Lynch return the merchandise and said he intended to call police. Before the couple drove away, the employee removed the license plate from the car. Police subsequently determined the car was registered to James. Once back inside the store, the employee found a large "gap" of missing product in the over-the-counter medicine aisle.

On February 15, the manager of a Rite Aid store on Avocado Boulevard in El Cajon almost bumped into James inside the store. She then noticed a woman later determined to be Lynch in a nearby aisle stocked with over-the-counter medication. Based on information she had received from other Rite Aid stores, she recognized Lynch as a potential thief. The store manager tried to look into Lynch's "huge black purse" and determine whether there was any merchandise inside. A man later identified as James, who was standing nearby, asked the manager if she looked at all of her customers the way the manager looked at Lynch.

The manager followed behind Lynch as Lynch began walking toward the front door of the store. As Lynch walked out the door, James stopped short of the front door

3

and asked another employee if the store manager was available.  When the manager responded, "Yeah, that's me," James, who was upset, said, "I can't believe you just looked at her [Lynch] like that.  I'd like to shoot your fucking ass."  The manager proceeded to follow Lynch out the front door and watched her get in the passenger seat of a car.  James then got in the driver's side of the same car and drove off.  The manager testified she went back into the store, looked at store surveillance video and verified that the woman had in fact stolen over-the-counter medicine.

## DISCUSSION

James contends there is insufficient evidence to support his convictions for aiding and abetting burglary and petty theft on February 1 as alleged in counts 1 and 2 because there is no evidence that his conduct assisted Lynch in the achievement of these crimes.  We disagree.

A.  *Governing Law*

Where a defendant challenges the sufficiency of the evidence supporting a conviction, we review the entire record in the light most favorable to the judgment to determine whether it contains substantial evidence from which a rational trier of fact could have found the defendant guilty beyond a reasonable doubt.  (*People v. Jennings* (1991) 53 Cal.3d 334, 364.)  A court of review must presume in support of the judgment the existence of every fact the jury could reasonably deduce from the evidence.  (*Ibid.*)

A person aids and abets the commission of a crime when the person, acting (1) with knowledge of the perpetrator's unlawful purpose, and (2) with intent or purpose of

4

committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates the commission of the crime. (*People v. Croy* (1985) 41 Cal.3d 1, 11-12; *People v. Beeman* (1984) 35 Cal.3d 547, 561; see also CALCRIM No. 401.[1])

Direct evidence of the defendant's mental state is rarely available and may be shown with circumstantial evidence. (*People v. Beeman*, *supra*, 35 Cal.3d at pp. 558-559.) Although mere presence at a crime scene and failure to prevent the crime, even with knowledge of the perpetrator's criminal purpose, do not constitute aiding and abetting, the trier of fact may consider such circumstances in determining aiding and abetting liability. (*People v. Nguyen* (1993) 21 Cal.App.4th 518, 529–530.) An unexplained presence at the scene of a crime implies complicity. (*People v. Wilson* (1928) 93 Cal.App. 632, 636.) Other circumstances to be considered are companionship, and conduct before and after the offense, including flight, which can indicate guilt. (*In re*

---

[1] CALCRIM No. 401, as given, states: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone *aids and abets* a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor. [¶] If you conclude that defendant was present at the scene of the crime or failed to prevent the crime, you may consider that fact in determining whether the defendant was an aider and abettor. However, the fact that a person is present at the scene of a crime or fails to prevent the crime does not, by itself, make him or her an aider and abettor."

*Lynette G.* (1976) 54 Cal.App.3d 1087, 1094; *People v. London* (1988) 206 Cal.App.3d 896, 903.)

"It has been consistently held that one who was present for the purpose of diverting suspicion, or to serve as a lookout, or to give warning of approach of anyone seeking to interfere," is liable as an aider and abettor, and thus a principal in the crime committed. (*People v. Silva* (1956) 143 Cal.App.2d 162, 169.) Whether a person is an accomplice is a question of fact for the jury, unless there is no dispute as to the facts or the inferences to be drawn from them. (*People v. Avila* (2006) 38 Cal.4th 491, 565.)

B. *Analysis*

Here, we conclude sufficient evidence supports James's conviction on counts 1 and 2 for aiding and abetting Lynch in connection with the theft of over-the-counter medicine from the store on February 1, 2012. Focusing on James's conduct both before and after the February 1st crime, we note from the record that James entered and left the Rite Aid store at roughly the same time as Lynch, his girlfriend, which was also the couple's modus operandi with respect to the incidents at the different Rite Aid stores on February 13th and 15th. (See *In re Lynette G.*, *supra*, 54 Cal.App.3d at p. 1094 ["Among factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, *companionship, and conduct before and after the offense*. . . . [F]light is one of the factors which is relevant in determining consciousness of guilt." (Italics added.)].)

In addition, the record shows that once inside the store during the February 1st incident, James went to the opposite end of the store from Lynch. There, James engaged a store employee in conversation about a SIM card while Lynch stole over-the-counter medication. The employee testified that James kept repeating the same thing over and over as he tried to explain to the employee what a "SIM card" was and did, even after the employee confessed not to understand. In addition, when the employee offered to find another store employee who might know more about SIM cards, James said "No, that's okay" and then left the store shortly after Lynch.

That there *may* have been an innocent explanation for James's presence in the Rite Aid store on February 1st or his decision to go to the opposite end of the store from where Lynch was stealing medication is not the test in our substantial evidence review: "If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding. [Citation.] 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.'" (See *People v. Albillar* (2010) 51 Cal.4th 47, 60.) The jury clearly found James was not merely present at the crime scene on February 1st, as he now contends, but rather was there to aid and abet Lynch in the theft of over-the-counter medicine.

Finally, during James's postarrest interview heard by the jury, he admitted he brought Lynch into his scheme to steal items from various stores and then sell them to

pay for living expenses.  He also admitted that immediately before the February 1st incident at Rite Aid, he and Lynch went into a CVS store and stole items.

From these facts, we conclude the record contains substantial evidence from which a rational trier of fact could find James guilty in counts 1 and 2 for aiding and abetting Lynch.  (See *People v. Jennings*, *supra*, 53 Cal.3d at p. 364.)

DISPOSITION

The judgment of conviction is affirmed.

BENKE, Acting P. J.

I CONCUR:

NARES, J.

8

McINTYRE, J.

I respectfully dissent. As the majority points out, the companionship between James and Lynch and James's postarrest interview statements support a conclusion that James knew Lynch planned to shoplift from the Rite Aid store on February 1. A jury could also reasonably infer that James went to the store intending to facilitate Lynch's crime. However, there is absolutely no evidence in the record that James by act or advice aided, promoted, encouraged or instigated the commission of the crime. (*People v. Croy* (1985) 41 Cal.3d 1, 11–12.) James and Lynch entered the store separately. James proceeded to the electronics aisle at the opposite end of the store from the over-the-counter medicine aisle, where he talked to an employee. Video surveillance showed that James was alone when he left the store.

We reject the majority's suggestion that James diverted suspicion away from Lynch or acted as a lookout. The store employee working near the over-the-counter medicine aisle observed Lynch from the time she saw Lynch pushing over-the-counter medication into her purse, until the time Lynch left the store. This employee had no interaction with James that day, never saw James inside or outside the store and testified that she observed Lynch without any other customer trying to distract her. Based on this evidence, no reasonable jury could conclude that James "distracted" this employee. Moreover, we fail to see how any reasonable jury could infer that James intended to create a distraction by talking to a *different* store employee at the *opposite end* of the store on a day that the store was "fairly empty."

Similarly, there is no evidence from which the jury could infer that James was acting as a lookout.  The store employee that assisted James on February 1 never observed him looking up at the reflective ceiling tiles to see the rest of the store.  She stated that her contact with James lasted about two minutes and that James focused on the merchandise in front of him.  While James happened to have left the store shortly after Lynch, there is no evidence that James could see Lynch or was otherwise communicating with her at the time.  This is unlike the later incidents on February 13 and 15, where James stayed close to Lynch and assisted her departure by driving her away on February 13 and distracting the store manager on February 15.

I would reverse the judgment on counts 1 and 2 because there is no evidence that James engaged in any act, word, or gesture either before or during the crime that could be reasonably interpreted as directly or indirectly aiding, promoting, encouraging, instigating, or facilitating.

McINTYRE, J.

2