Darrick A. ROGERS,
Petitioner–Appellee,

v.

Norris W. McMACKIN, Superintendent,
Respondent–Appellant.

No. 88–4092.

United States Court of Appeals,
Sixth Circuit.

Argued May 25, 1989.

Decided Aug. 28, 1989.

J. Dean Carro (argued), University of Akron School of Law, Appellate Review Office, Akron, Ohio, for petitioner-appellee.

Donald G. Keyser, Asst. Atty. Gen. (argued), Office of the Atty. Gen. of Ohio, Columbus, Ohio, for respondent-appellant.

Philip D. Bogdanoff, Asst. Pros. Atty., Akron, Ohio, amicus curiae.

Before MILBURN and NELSON, Circuit Judges, and BERTELSMAN, District Judge.*

DAVID A. NELSON, Circuit Judge.

This is a habeas corpus case brought by a man who was convicted, in a state court bench trial, of aggravated robbery and involuntary manslaughter. The question presented is whether the petitioner's constitutional right to be confronted with the witnesses against him was violated by the receipt into evidence of a nontestifying co-defendant's confession. On the strength of *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986), the federal district court concluded that the use of the confes-

* The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

sion constituted error of constitutional magnitude. Finding that the error was not harmless, the court granted the writ.

We think the district court erred in applying *Bruton* and *Lee* to this case. *Bruton* was concerned with jury trials, and rested on the proposition that juries cannot be trusted to consider a nontestifying co-defendant's confession solely in relation to that defendant's case. *Bruton* was not concerned with bench trials, and *Lee* did not hold that the rule in *Bruton* should be applied automatically to bench trials. The record in the present case does not suggest that the state trial judge relied on the co-defendant's confession in determining petitioner's guilt, and the state court's decision to let the confession be introduced as evidence of the guilt of the person making the confession was constitutionally permissible, in our view.

## I

Darrick A. Rogers, the petitioner herein, was charged with participation in the robbery of an Akron, Ohio, restaurant and the fatal shooting of its proprietor. The evidence against Mr. Rogers consisted primarily of his own confession—a confession that varied substantially from what he told the police initially.

On the day after the shooting, it appears, Mr. Rogers sought out a cousin, who was an Akron police officer, to say that an acquaintance named Mimi Cash was falsely implicating him (Rogers) in the crime. The officer took Rogers to the police station, gave him a *Miranda* warning, and obtained a written statement from him. Mr. Rogers said at this point that he had been in the vicinity of the robbery because he was visiting his girlfriend, who lived nearby. She asked him to get her some cigarettes, the statement continued, and while driving to the store on this errand he was hailed by two men whom he identified as "Andre" and "Ricky." He stopped, and the men jumped in his car and asked him to drive them away because they had just robbed a restaurant with Mimi Cash and had shot a woman. That was the substance of the first statement.

After Mr. Rogers had left the police station, Mimi Cash, Ricardo Forney and Andre Robinson were arrested on unrelated charges. Andre Robinson confessed to the robbery and shooting, and implicated Messrs. Rogers and Forney as well. The police then picked up Mr. Rogers and took him back to the police station for questioning. Told that Robinson had implicated him, Rogers now confessed to a much more active role in the crime.

In his confession, which was tape-recorded, Mr. Rogers said that he and Robinson and Forney had engaged in several discussions about robbing Canova's Restaurant. On a prior day they had driven past the restaurant with the intent to rob it, but had refrained from doing so because the restaurant was crowded. On the day the robbery was actually committed, the three men drove to the restaurant after obtaining a gun that belonged to Robinson's mother. Mr. Rogers, who was at the wheel of the car, parked on a side street around the corner from the restaurant. He then told his companions "I ain't going in the joint to rob no joint." Robinson and Forney entered the restaurant without Mr. Rogers. While they were gone, Rogers got out of his car and walked to a nearby "smoke-house" to obtain illegal drugs. He found that the house was closed. Returning to the car, he found that Robinson and Forney were hunched down in the back seat. They told Rogers to drive away, saying "Rick just shot a lady." Rogers then drove the men to several places in the city.

Robinson gave a confession that largely paralleled Rogers' insofar as the latter's role in the robbery was concerned. The only significant differences between the confessions were that (1) Robinson attributed the initial idea of the robbery to Rogers, while Rogers attributed it to Robinson and Forney, and (2) Robinson said Rogers was waiting in the car with the motor running when Robinson and Forney returned from the restaurant.

Rogers and Robinson were scheduled to be tried together before a judge of the Court of Common Pleas of Summit County, Ohio. The defendants moved for separate

trials, each arguing that his constitutional right of confrontation would be violated if the other's confession were introduced after a refusal to testify. See *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (regardless of limiting instruction to jury, out-of-court confession of nontestifying co-defendant may not be introduced in jury trial in federal court, where confession implicates defendant).

The common pleas court declined to grant Rogers and Robinson separate trials, reasoning that *Bruton* was not applicable to bench trials and that *Bruton* does not apply where co-defendants have given consistent statements. The court expressed confidence in its ability to keep Robinson's and Rogers' statements separate.

When the confession that had been given by Robinson was introduced at trial as evidence of his guilt, petitioner Rogers moved for a mistrial. The court overruled the motion. At the conclusion of the evidence, the court rendered a general verdict finding both defendants guilty of aggravated robbery. Robinson was found guilty of aggravated murder as well, and Petitioner Rogers was found guilty of the lesser included offense of involuntary manslaughter. The present habeas corpus proceeding was initiated by Rogers after the exhaustion of his state court remedies.

## II

■ In *Bruton v. United States*, 391 U.S. 123, 124–25, 88 S.Ct. 1620, 1621–22, 20 L.Ed.2d 476 (1968), the Supreme Court revisited the question whether, notwithstanding limiting instructions by the trial court, the conviction of a defendant at a joint trial before a jury in a federal court should be set aside where a nontestifying co-defendant's confession inculpating the defendant had been received in evidence. The Court had answered that question in the negative in the earlier case of *Delli Paoli v. United States*, 352 U.S. 232, 77 S.Ct. 294, 1 L.Ed.2d 278 (1957). The *Delli Paoli* Court concluded "that it is 'reasonably possible for the jury to follow' sufficiently clear instructions to disregard the confessor's extrajudicial statement that his co-defen-

dant participated with him in committing the crime." *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622 (quoting *Delli Paoli*, 352 U.S. at 239, 77 S.Ct. at 298). The *Bruton* Court recognized that "[i]f it were true that the jury disregarded the reference to the co-defendant, no question would arise under the Confrontation Clause, because by hypothesis the case is treated as if the confessor made no statement inculpating the nonconfessor." *Id.*

The *Bruton* decision rested on the belief that regardless of what instructions they received, jurors could not be counted on to blot a co-defendant's confession out of their minds when considering the guilt or innocence of the fellow defendant. Believing that *Delli Paoli*'s basic premise had been repudiated in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), the *Bruton* Court decided that "in the context of a joint trial we cannot accept limiting instructions as an adequate substitute for petitioner's constitutional right of cross-examination." *Bruton*, 391 U.S. at 137, 88 S.Ct. at 1628. The court explained that

> "there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored. Such a context is presented here, where the powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant, are deliberately spread before the jury in a joint trial. Not only are the incriminations devastating to the defendant but their credibility is inevitably suspect, a fact recognized when accomplices do take the stand and the jury is instructed to weigh their testimony carefully given the recognized motivation to shift blame onto others. The unreliability of such evidence is intolerably compounded when the alleged accomplice, as here, does not testify and cannot be tested by cross-examination."

*Id.* at 135–36, 88 S.Ct. at 1627–28 (citations and footnote omitted).

In light of *Bruton's* emphasis on the limitations of the jury system, it is not surprising that at least three courts of appeals subsequently held *Bruton* to be inapplicable to bench trials. *United States ex rel. Faulisi v. Pinkney,* 611 F.2d 176, 178 (7th Cir.1979) (the *Bruton* "holding is simply inapplicable in the case of a bench trial"); *United States v. Castro,* 413 F.2d 891, 894–95 & n. 7 (1st Cir.1969) ("A jury may have difficulty in disregarding extrajudicial statements implicating a defendant. We will not presume that a judge suffers from the same disability. Indeed, the presumption is to the contrary.") *cert. denied,* 397 U.S. 950, 90 S.Ct. 974, 25 L.Ed.2d 132 (1970); *Cockrell v. Oberhauser,* 413 F.2d 256, 258 (9th Cir.1969) (same).

■ In the present situation, the state court trial judge clearly recognized his obligation to compartmentalize the confessions in his mind. He quoted a portion of *Cockrell* that describes the "core" of *Bruton* as being

"that the admission of that evidence against the confessing defendant is tantamount to its admission against his codefendant because the jury will ignore the limitation in deciding the issue of the non-confessing defendant's guilt or innocence.... Nothing in *Bruton* suggests that a judge is incapable of applying the law of limited admissibility which he has himself announced."

413 F.2d at 258.

■ The state trial judge also relied on the "interlocking confessions" exception to *Bruton.* Our consideration of this exception confirms our view that the judge did not intend to use Robinson's confession as evidence of Rogers' guilt.

The interlocking confessions exception originated in the Second Circuit shortly after *Bruton* was decided. See *United States ex rel. Catanzaro v. Mancusi,* 404 F.2d 296 (2d Cir.1968), *cert. denied,* 397 U.S. 942, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970). The exception was explained thus in *United States ex rel. Stanbridge v. Zelker,* 514 F.2d 45, 48–49 (2d Cir.), *cert. denied,* 423 U.S. 872, 96 S.Ct. 138, 46 L.Ed.2d 102 (1975):

"The scope of the *Bruton* decision has been considered by our court on a number of occasions, and we have concluded that error of constitutional dimensions does not inevitably occur if the questioned confession is admitted under proper instructions from the court concerning its limited use and purpose. The likelihood of error must be measured against prejudicial consequences of the failure of the jury to follow the court's instructions, i.e., the 'devastating' effect of the incriminations contained in the codefendant's admissions. Where the confession adds nothing to what is otherwise clearly and properly in the case, it can have little 'devastating' effect.

\*    \*    \*    \*    \*    \*

This 'interlocking confession' doctrine does not require absolute identity of statements. It is sufficient if the two confessions are substantially the same and consistent on the major elements of the crime involved." · (Citations omitted.)

The Supreme Court considered the effect of interlocking confessions in *Parker v. Randolph,* 442 U.S. 62, 99 S.Ct. 2132, 60 L.Ed.2d 713 (1979). Four justices were prepared to "hold that admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." *Id.* at 75, 99 S.Ct. at 2140 (footnote omitted). The plurality distinguished *Bruton* in these terms:

"When, as in Bruton, the confessing codefendant has chosen not to take the stand and the implicated defendant has made no extrajudicial admission of guilt, limiting instructions cannot be accepted as adequate to safeguard the defendant's rights under the Confrontation Clause. Under such circumstances, the 'practical and human limitations of the jury system' override the theoretically sound premise that a jury will follow the trial court's instructions. But when the defendant's own confession is properly before the jury, we believe that the constitutional scales tip the other way. The possible prejudice resulting from the fail-

ure of the jury to follow the trial court's instructions is not so 'devastating' or 'vital' to the confessing defendant to require departure from the general rule allowing admission of evidence with limiting instructions."

442 U.S. at 74, 99 S.Ct. at 2140 (citations and footnote omitted).

The Supreme Court repudiated the "interlocking confessions" exception in *Cruz v. New York*, 481 U.S. 186, 107 S.Ct. 1714, 95 L.Ed.2d 162 (1987), a case decided after petitioner Roger's trial had been concluded. An understanding of the exception is necessary, however, because reliance on the exception by the judge before whom Rogers was tried indicates that the judge did not intend to use Robinson's confession against Rogers. As articulated by the Second Circuit and the *Parker* plurality, the interlocking confessions exception was not a license for the trier of fact to consider a co-defendant's confession as evidence of the defendant's guilt; it simply recognized that where the defendant has himself confessed, the impact of a co-defendant's interlocking confession will be less, making it more likely that the trier of fact can disregard it when considering the guilt or innocence of the defendant.

Attempting to cast doubt on the conclusion that the state trial judge did not consider Robinson's confession as evidence of Rogers' guilt, Rogers quotes an ambiguous statement made in the ruling on the motion for separate trials:

"I think where we have the situation here where this case is going to be tried to the Court and where both Defendants have made statements and, again, where I have heard both of the statements, I think I'm perfectly capable of weighing the statements of the Defendants separately and putting them together."

Taken out of context, this statement might leave a reviewing court on the horns of a dilemma unless it were prepared to indulge the usual presumption that no improper use was made of the evidence.[1] In context, however, we think the following gloss explains the judge's true intent: "I think I'm perfectly capable of weighing the statements of the Defendants separately and putting them together [in a single trial]." The next sentence in the judge's statement tends to confirm this reading: "I think that ability outweighs what we have to go through to hold separate trials...."

If the phrase "putting them together" does not refer to the defendants themselves (and the intended referent of the pronoun could well have been the defendants, rather than the defendants' statements), we think the judge simply meant that he was capable of admitting the statements together in one trial and weighing them separately. After making the ambiguous statement, indeed, the court went on to say "I think those considerations [of convenience and judicial economy] outweigh any problem which we may have in separating these out in a bench trial in which both Defendants have made statements. So, I don't anticipate any problem in doing that." The judge obviously recognized that it was his duty to separate the statements out, and he was saying that he would be capable of doing that in a bench trial at which both Rogers and Robinson would appear as defendants.

We conclude that the admission of the co-defendants' statements was not error of constitutional dimension, at least under the Sixth Amendment as it had been construed up to the time of Rogers' conviction. Given the hypothesis that the state trial judge disregarded the reference to Rogers in considering Robinson's confession, we can say, paraphrasing *Bruton*, that no question arose under the Confrontation Clause "because by hypothesis the case is treated as if Robinson made no statement inculpating Rogers." *Bruton*, 391 U.S. at 126, 88 S.Ct. at 1622.

### III

Even if the admission of the confession conformed to the law as it existed at the

---

**1.** "The presumption is that the improper testimonial evidence, taken under objection, was given no weight by the trial judge and the Court considered only properly admitted and relevant evidence in rendering its decision." *United States v. McCarthy*, 470 F.2d 222, 224 (6th Cir. 1972) (citations omitted).

time, there remains the question whether Rogers' conviction must be set aside in this collateral proceeding because of subsequent Supreme Court decisions having retroactive effect. The district court answered that question in the affirmative, relying largely on *Lee v. Illinois,* 476 U.S. 530, 106 S.Ct. 2056, 90 L.Ed.2d 514 (1986)—a case which the district court read as expanding the *Bruton* doctrine to make it applicable to non-jury trials. With that understanding of *Lee,* the district court looked for the "particularized guarantees of trustworthiness" required by *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980); finding none, the court concluded that the admission of Robinson's confession constituted prejudicial error of constitutional dimension.

We do not agree that *Lee* made *Bruton* applicable to bench trials. In *Lee* the "trial judge expressly relied on portions of the co-defendant's confession, obtained by police at the time of arrest, as substantive evidence against petitioner." 476 U.S. at 531, 106 S.Ct. at 2057. The question for decision was not whether *admission* of the co-defendant's confession was constitutional error, but "whether such *reliance* by the judge upon the codefendant's confession violated petitioner's rights...." *Id.* (Emphasis added.) See *Cooper v. Scroggy,* 845 F.2d 1385, 1392–93 (6th Cir.1988), where we cited *Lee* as authority for the proposition that *"admission* of out-of-court statements by a nontestifying co-defendant *as substantive evidence against a defendant"* contravenes the Confrontation Clause. (Footnote omitted and emphasis added.)

The Supreme Court observed in *Lee* itself that *Lee* "is not strictly speaking a *Bruton* case." 476 U.S. at 542, 106 S.Ct. at 2063. *Bruton,* the Court said, was based on the inapplicability of "the ordinarily sound assumption that a jury will be able to follow faithfully its instructions." *Id.* The *Lee* Court did not expand *Bruton* but distinguished it, saying "[w]e are not here concerned with the effectiveness of limiting instructions." *Id.*

To apply *Bruton* to bench trials would be to conclude that judges, like jurors, may

well be incapable of separating evidence properly admitted against one defendant from evidence admitted against another. There is no discussion in *Lee* of whether judges must be presumed to suffer from this incapacity. The *Lee* Court did not even consider whether the co-defendant's confession was so "devastating" as to prevent its proper use. And although *Lee,* like *Parker v. Randolph, supra,* 442 U.S. 62, 99 S.Ct. 2132, was a case of interlocking confessions, the *Lee* Court focused not on whether their interlocking nature made them "devastating," but on whether their interlocking nature made them reliable. *Lee,* 476 U.S. at 544–546, 106 S.Ct. at 2063–65; *cf. Cruz,* 481 U.S. at 191–93, 107 S.Ct. at 1717–19.

The *Lee* Court focused on reliability because the trial court's use of the co-defendant's confession against Lee was clear. The question was not whether the judge had been able to blot the evidence out of his mind, but whether the cross-use of the confessions was permissible. The answer to this question clearly was "no" unless it could be shown that the confession had sufficient "indicia of reliability." *See Ohio v. Roberts,* 448 U.S. at 66, 100 S.Ct. at 2539. No such special showing was necessary in the present situation, because *Lee* simply did not make *Bruton* applicable to bench trials. The question whether *Lee* ought to be applied retroactively is not before us.

IV

Even if the state trial judge did consider Robinson's confession in assessing Rogers' guilt, we believe any such error was harmless beyond a reasonable doubt. See *Cruz,* 481 U.S. at 194, 107 S.Ct. at 17; *Lee,* 476 U.S. at 547, 106 S.Ct. at 20; *Harrington v. California,* 395 U.S. 250, 251, 254, 89 S.Ct. 1726, 1727, 1728, 23 L.Ed.2d 284 (1969).

Mr. Rogers' own confession showed that (1) he discussed the robbery with his friends; (2) he drove them to the restaurant, knowing that they were armed and that they intended "to eat and rob"; (3) he remained parked around the corner of the

restaurant until his friends returned; and (4) he then drove the men away. The self-portrait Rogers paints is hardly that of an unwilling accomplice. Somewhat reluctant, perhaps, but by no means coerced.

Under Ohio law, a person who aids or abets another in committing an offense is guilty of the substantive offense as if he were a principal offender. Ohio Rev.Code § 2923.03(A)(2) & (F). In *State v. Lockett* the Supreme Court of Ohio said "[i]t is well established in Ohio that ' * * * one may be presumed to intend results which are the natural, reasonable, and probable consequences of his voluntary act * * * '" 49 Ohio St.2d 48, 358 N.E.2d 1062, 1070–71 (1976) (quoting *State v. Farmer,* 156 Ohio St. 214, 222, 102 N.E.2d 11 (1951)). It is also true, under Ohio law, that

> "[i]f a conspired robbery, and the manner of its accomplishment, would be reasonably likely to produce death, each person engaged in the common design to commit the robbery is guilty with the principal killer as an aider and abettor in the homicide although not actually present at the time of the homicide, and a purposeful intent to kill by the aider and abettor may be found to exist beyond a reasonable doubt under such circumstances."

*Id.* 358 N.E.2d at 1065. A person who "cause[s] the death of another as a proximate result of the offender's committing or attempting to commit a felony" is guilty of involuntary manslaughter. Ohio Rev.Code § 2903.04.

We think the evidence shows beyond a reasonable doubt that Rogers, despite his professed misgivings, entered into a common design with Robinson and Forney to rob Canova's restaurant. We fully agree with the magistrate who, in recommending that Rogers' petition be dismissed, said "[f]rom his own mouth, the petitioner acknowledged a degree of knowing involvement that makes him culpable vicariously."

## V

The judgment of the district court is REVERSED, and the case is REMANDED to the district court with instructions to vacate the writ of habeas corpus.