[No. B062314. Second Dist., Div. Three. Apr. 13, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH L. WALKKEIN et al., Defendants and Appellants.

**COUNSEL**

Richard D. Rome and Robert Derham, under appointments by the Court of Appeal, for Defendants and Appellants.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Roger E. Venturi and Maureen A. Daly, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**CROSKEY, J.**—Joseph L. Walkkein and Antonio Royal Watson were charged by information with attempted robbery (count 1; Pen. Code,

§ 664/211)[1] and burglary (count 2; § 459). During their court trial, over Watson's objection, extrajudicial statements by Walkkein which incriminated Watson were admitted into evidence as to Walkkein only.

Watson's appeal raises the issue of whether the rule of *People* v. *Aranda* (1965) 63 Cal.2d 518 [47 Cal.Rptr. 353, 407 P.2d 265], prohibiting the admission into evidence of extrajudicial statements by one codefendant, which incriminate another codefendant, applies where the defendants waive trial by jury and are tried by the court. This issue has not been explicitly resolved in any published California case. However, well-established federal authorities have concluded the United States Constitution does not require application of the rule in a court trial. (*Richardson* v. *Marsh* (1987) 481 U.S. 200, 207-208 [95 L.Ed.2d 176, 184-185, 107 S.Ct. 1702]; *Rogers* v. *Mc-Mackin* (6th Cir. 1989) 884 F.2d 252, 256-257, cert. denied in *Rogers* v. *Hills* (1990) (493 U.S. 1061 [107 L.Ed.2d 960, 110 S.Ct. 877].) We therefore will conclude that article I, section 28, subdivision (d), the "Truth-in-Evidence" provision of the California Constitution, forbids such application.

In the proceedings below, Walkkein was found guilty of burglary and attempted robbery as charged. The charge of attempted robbery was dismissed as to Watson, and he was convicted of burglary only. In bifurcated proceedings, the court found true allegations made in amendments to the information that Walkkein had suffered one prior serious felony conviction (§ 667, subd. (a)) and served three prior prison terms (§ 667.5, subd. (b)) and that Watson had served one prior prison term (§ 667.5, subd. (b)).[2] Walkkein was sentenced to a total unstayed term of fourteen years in the state prison, consisting of the upper term of six years for the burglary, five years for the prior serious felony and one year for each of the prior prison terms. Watson was sentenced to seven years in the state prison, consisting of the upper term of six years for the burglary and one year for the prior prison term.

The sole error which we find in the proceedings below is the award of one day of unauthorized presentence conduct credit to each defendant. We therefore shall order each abstract of judgment modified by the deduction of one day from each defendant's conduct credits and shall otherwise affirm the judgments.

## FACTUAL AND PROCEDURAL BACKGROUND

Viewing the facts according to the usual rules governing appellate review (*People* v. *Johnson* (1980) 26 Cal.3d 557, 578 [162 Cal.Rptr. 431, 606 P.2d

---

[1]Unless otherwise noted, further statutory references are to the Penal Code.

[2]Walkkein was originally charged with three prior serious felonies and three prior prison terms. Watson was originally charged with one prior serious felony and one prior prison term.

738, 16 A.L.R.4th 1255]), at approximately 9:35 a.m. on May 31, 1991, 86-year-old Antonia Prejean and her roommate Rose Lee Sherwood were in separate rooms of their fifth floor apartment, apartment No. 512 at 1725 The Promenade in the City of Santa Monica, California, when Ms. Prejean heard a knock at the door. When she opened the door, a person she later identified as Walkkein was standing outside holding a paper bag. Walkkein spoke, but Ms. Prejean, who was hard of hearing, could not understand him. Concluding he was trying to sell something, Ms. Prejean said she had no money and tried to close the door, but Walkkein's foot was in the door.

As Ms. Prejean tried to close her door, Walkkein put his hand over her face and pushed her backward onto a sofa. She screamed. At this point, Ms. Sherwood entered the living room from a bedroom, and another man entered the apartment. Ms. Sherwood also screamed, whereupon both men "ran like heck."

A neighbor, Thomas Clappier, heard the women's screams and saw two men running away. Another neighbor telephoned the police. Shortly thereafter, Watson was arrested at a nearby bus stop. Clappier identified him at an in-field show-up and at trial as one of the men he had seen fleeing. Walkkein was arrested outside Ms. Prejean's apartment building. Ms. Prejean identified him at an in-field show-up as the first man who entered her apartment, the one who shoved her onto the couch. A brown paper shopping bag was found on the ground near Walkkein when he was arrested. When Watson was searched at the time of booking, a brown paper shopping bag was found concealed in the waistband of his pants.

Walkkein gave the police a false name when he was arrested. A few days later, he spoke with Detective Robert Bird and denied all involvement in the offense. When Bird stated he did not believe Walkkein's story and also told him Ms. Prejean had identified him as one of the robbers, Walkkein admitted he and Watson went to Ms. Prejean's apartment intending to steal her purse and anything else of small value. They carried brown paper bags to hide the purses they intended to steal.

Watson testified at trial. He said he had met Walkkein the day before the offense. On the morning of the offense, the two decided to go to Santa Monica to visit either a friend of Watson's or a girl Walkkein had recently met at the beach. They both carried brown shopping bags with them to carry their belongings. Watson went with Walkkein to the fifth floor of Ms. Prejean's building, but had no intent to steal anything there. When he saw that Walkkein was about to rob Ms. Prejean, he entered the apartment and tried to persuade Walkkein to stop, but was unsuccessful.

CONTENTIONS ON APPEAL

Watson contends that: (1) his rights under *People* v. *Aranda, supra,* 63 Cal.2d 518 and *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed. 2d 476, 88 S.Ct. 1620] were violated by the admission into evidence of statements by Walkkein which incriminated Watson; (2) his conviction was not supported by sufficient evidence of an intent to commit a larceny or felony within the victim's apartment. Walkkein contends the court improperly imposed an enhancement under section 667.5, subdivision (b), for a prior prison term which arose out of an offense committed while serving an earlier term of imprisonment.

The People dispute each of the defendants' contentions and argue that both defendants were granted unauthorized good time-work time credits for presentence custody.

1. *The "Bruton-Aranda" Rule Does Not Apply to Court Trials.*

Shortly after his arrest, Walkkein waived his rights under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], spoke with a police officer, and gave the officer two mutually inconsistent accounts of events surrounding the offense. ■ Watson contends the admission of those statements into evidence without excising all references to Watson violated his rights under *People* v. *Aranda, supra,* 63 Cal.2d 518 *(Aranda)* and *Bruton* v. *United States, supra,* 391 U.S. 123 *(Bruton).*

We may dispose quickly of the contention that Watson's rights under *Bruton* were violated. *Bruton* does not require the exclusion of one codefendant's extrajudicial statement incriminating the other codefendant in a court trial. *(Rogers* v. *McMackin, supra,* 884 F.2d at pp. 256-257; *Cockrell* v. *Oberhauser* (9th Cir. 1969) 413 F.2d 256, 258.[3])

As regards Watson's claim under *Aranda,* prior to the adoption by the electorate of Proposition 8, and in particular, its "Truth-in-Evidence" provision, California Constitution, article I, section 28, subdivision (d) (article I, section 28(d)), it was assumed, although never actually decided, that the *Aranda* rule would apply in court trials, as well as jury trials. *(People* v. *Charles* (1967) 66 Cal.2d 330, 338-339, fn. 12 [57 Cal.Rptr. 745, 425 P.2d

---

[3]See also additional cases cited in *Rogers* v. *McMackin, supra,* 884 F.2d at page 255.

545]; *People* v. *Miles* (1969) 272 Cal.App.2d 212, 219, fn. 4 [77 Cal.Rptr. 89].) However, since the adoption of article I, section 28(d),[4] that conclusion is open to serious question.

In *Aranda*, the California Supreme Court held that when the prosecution seeks to introduce a codefendant's extrajudicial statement that incriminates not only the codefendant but also the nondeclarant defendant, the trial court must adopt one of the following procedures: (1) permit a joint trial if all parts of the extrajudicial statements implicating any codefendants can be and are effectively deleted without prejudice to the declarant; (2) grant severance of the trials if the prosecution insists it must use the extrajudicial statements and it appears effective deletions cannot be made; (3) if the prosecution has successfully resisted a motion for severance and thereafter offers an extrajudicial statement implicating a codefendant, exclude the statement if effective deletions are not possible. (63 Cal.2d at pp. 530-531.) The Supreme Court did not find the rule it enunciated in *Aranda* to be constitutionally compelled, but adopted it as a judicially declared rule of procedure. (*Id.* at p. 530.)

▇▇▇ Three years after the California Supreme Court's decision in *Aranda*, the United States Supreme Court held in *Bruton* that an accused's rights under the confrontation clause of the Sixth Amendment are violated at the accused's joint trial with a nontestifying codefendant, if the codefendant's confession which facially inculpates the accused is admitted into evidence. (391 U.S. at p. 126 [20 L.Ed.2d at pp. 479-480].) The Supreme Court held that the Sixth Amendment is violated by the admission of such a statement even if the jury is instructed to disregard the codefendant's confession in determining the accused's guilt or innocence. (*Ibid.*)

To the extent that the California rule under *Aranda* corresponds to the rule enunciated by the United States Supreme Court in *Bruton*, it is not abrogated by article I, section 28(d). (*People* v. *Mitcham* (1992) 1 Cal.4th 1027, 1045, fn. 6 [5 Cal.Rptr.2d 230, 824 P.2d 1277]; *In re Lance W.* (1985) 37 Cal.3d 873, 879, 882 [210 Cal.Rptr. 631, 694 P.2d 744].) ▇▇▇ However, to the extent *Aranda* does impose broader restrictions than those imposed under *Bruton*, it is abrogated by section 28(d). (*People* v. *Boyd* (1990) 222 Cal.App.3d 541, 562-563 [271 Cal.Rptr. 738], rev. den. Oct. 30, 1990.)

Before the adoption of article I, section 28(d), the state rule of exclusion under *Aranda* was broader than the federal rule under *Bruton* in two primary respects. First, under *Aranda*, one codefendant's extrajudicial statement implicating the other codefendant was inadmissible whether or not the

---

[4]As is by now commonly known, article I, section 28(d) provides that, except as otherwise provided by statute, "relevant evidence shall not be excluded in any criminal proceedings. . . ."

declarant codefendant testified at trial (*People* v. *Brown* (1978) 79 Cal.App.3d 649, 656-657 [145 Cal.Rptr. 130]; *People* v. *Atkins* (1975) 53 Cal.App.3d 348, 356-357 [125 Cal.Rptr. 855]), whereas under *Bruton*, exclusion of such testimony is required only if the declarant codefendant does not testify. (*Nelson* v. *O'Neil* (1971) 402 U.S. 622, 629-630 [29 L.Ed.2d 222, 228-229, 91 S.Ct. 1723].) Secondly, as we have observed, under *Aranda*, the extrajudicial statement of one codefendant implicating another was assumed to be inadmissible in court trials as well as jury trials (*People* v. *Charles*, *supra*, 66 Cal.2d at pp. 338-339, fn. 12; *People* v. *Miles*, *supra*, 272 Cal.App.2d at p. 219, fn. 4), whereas, as we also have observed, *Bruton* does not require the exclusion of such statements in court trials. (*Rogers* v. *McMackin*, *supra*, 884 F.2d at pp. 256-257; *Cockrell* v. *Oberhauser*, *supra*, 413 F.2d at p. 258.)

In *People* v. *Boyd*, *supra*, the Court of Appeal concluded that article I, section 28(d) abrogated the *Aranda* rule to the extent that it required the exclusion of incriminating extrajudicial statements of a codefendant even if the declarant codefendant testified at trial and was available for cross-examination. (*People* v. *Boyd*, *supra*, 222 Cal.App.3d at p. 562.)

■ Where a declarant codefendant testifies at trial and is available for cross-examination, the *Bruton* rule does not apply, because the Sixth Amendment guarantee is satisfied. (*Nelson* v. *O'Neil*, *supra*, 402 U.S. at pp. 629-630 [29 L.Ed.2d at pp. 228-229].) ■ The rule does not apply in court trials because it is premised upon the extreme danger that a jury will be unable, despite instructions by the court, to disregard with respect to the accused the statement of a codefendant which expressly incriminates the accused. (*Richardson* v. *Marsh*, *supra*, 481 U.S. at pp. 207-208 [95 L.Ed.2d at pp. 185-186]; *Bruton*, *supra*, 391 U.S. at pp. 135-136 [20 L.Ed.2d at pp. 484-485].) It is not presumed a judge will suffer from the same disability. (*Richardson* v. *Marsh*, *supra*, 481 U.S. at pp. 207-208 [95 L.Ed.2d at pp. 185-186]; *Rogers* v. *McMackin*, *supra*, 884 F.2d at pp. 254-255; *Cockrell* v. *Oberhauser*, *supra*, 413 F.2d at p. 258.)

The California courts also presume that a professional jurist is capable of weighing admissible evidence without being prejudiced by extraneous matters. (*In re Hernandez* (1966) 64 Cal.2d 850, 851 [51 Cal.Rptr. 915, 415 P.2d 803]; *People* v. *Lashley* (1991) 1 Cal.App.4th 938, 952 [2 Cal.Rptr.2d 629]; *Solomon* v. *Superior Court* (1981) 122 Cal.App.3d 532, 537 [177 Cal.Rptr. 1].) Accordingly, the California courts have recognized that a court trial is not affected by the extreme danger of prejudice to an accused which infects a jury trial if a codefendant's statements incriminating the accused are admitted into evidence. (*People* v. *Charles*, *supra*, 66 Cal.2d at p. 338, fn.

12; *People* v. *Talley* (1967) 65 Cal.2d 830, 841 [56 Cal.Rptr. 492, 423 P.2d 564].) Absent that extreme danger of prejudice, exclusion of a codefendant's incriminating statements should not be required in court trials, for the United States Supreme Court has made clear that the Sixth Amendment right is not violated by the admission of a codefendant's statements where "there does not exist the *overwhelming probability*" that the fact finder will be unable to disregard the statements in determining the accused's guilt or innocence. (*Richardson* v. *Marsh, supra,* 481 U.S. at pp. 208, 211 [95 L.Ed.2d at pp. 186, 188].) (Italics added.)

In view of the foregoing rules and rationale, both state and federal, we are persuaded, both under controlling authority and as a matter of policy, that article I, section 28(d) abrogates *Aranda* to the extent *Aranda* prohibits the admission of a codefendant's statement incriminating the accused in a trial to the court. The admission of Walkkein's extrajudicial statements against Walkkein alone in this court trial did not violate Watson's rights under the Sixth Amendment, *Bruton,* or *Aranda.*

2. *Watson's Conviction Was Supported by Substantial Evidence.*

Watson contends his conviction of burglary was not supported by sufficient evidence that he intended to enter Ms. Prejean's residence to commit a felony. This contention is entirely without merit. Ms. Prejean testified that immediately after Walkkein shoved her onto her couch, another man entered the apartment. When she and Ms. Sherwood screamed, both men "ran like heck." The court sitting as the trier of fact could reasonably infer from the above circumstances that both Walkkein and Watson entered the apartment with the intent to commit a theft or felony, but were frightened away by the women's screams. (*People* v. *Matson* (1974) 13 Cal.3d 35, 41 [117 Cal.Rptr. 664, 528 P.2d 752]; *People* v. *Nunley* (1985) 168 Cal.App.3d 225, 232 [214 Cal.Rptr. 82].) The court's factual finding and verdict are sufficiently supported by the evidence.

3. *The Court Properly Enhanced Walkkein's Sentence Under Section 667.5 for a Prison Term Arising Out of an Offense Committed While Serving Another Prison Term.*

Walkkein contends he was never physically released from incarceration for his conviction of assault before his sentence for an in-prison battery commenced, and therefore, he served only one "continuous" period of incarceration, which was "completed" upon his release from incarceration after serving the sentences on both offenses. He is incorrect. When a consecutive sentence is imposed under section 1170.1, subdivision (c), for

an offense committed in state prison, section 1170.1 requires such sentence to commence *after* the completion of the term for which the defendant was originally imprisoned.[5] Thus, each term is a separate, "continuous completed" term, which is available for enhancement under section 667.5 if the defendant is subsequently convicted of a felony. (*People* v. *Carr* (1988) 204 Cal.App.3d 774, 780 [251 Cal.Rptr. 458]; *People* v. *Cardenas* (1987) 192 Cal.App.3d 51, 60 [237 Cal.Rptr. 249].)

Watson urges us to reject the conclusions of the *Carr* and *Cardenas* courts and adopt instead the holding of an earlier case, *People* v. *Smith* (1985) 166 Cal.App.3d 1003 [212 Cal.Rptr. 737], in which the court held that only one prior prison term is served when a defendant is convicted and sentenced for an offense committed while in prison for an earlier offense. (166 Cal.App.3d at p. 1010.) However, the holding in *Smith* appears in only one 8-line paragraph devoted to the issue and is supported by no analysis. More importantly, it contravenes the express requirements of section 1170, subdivision (c), and undermines the purpose of that section and of section 667.5.

The Legislature enacted section 667.5 for the purpose of increasing the punishment incurred by repeat offenders and thereby deterring recidivism. (*In re Kelly* (1983) 33 Cal.3d 267, 272 [188 Cal.Rptr. 447, 655 P.2d 1282]; *People* v. *Espinoza* (1979) 99 Cal.App.3d 59, 74 [159 Cal.Rptr. 894].) Section 1170.1, subdivision (c), was enacted to punish crimes committed in prison more severely than crimes committed "on the outside." (*People* v. *McCart* (1982) 32 Cal.3d 338, 340 [185 Cal.Rptr. 284, 649 P.2d 926]; *People* v. *Cardenas, supra*, 192 Cal.App.3d at p. 58.) Both of the foregoing purposes would be undermined if persons who re-offend in prison received a lesser penalty than persons who re-offend "on the outside." Yet, this would be the result if a sentence imposed under section 1170.1, subdivision (c), for an in-prison offense were not counted as a separate prison term for purposes of enhancement under section 667.5 if and when the person re-offended yet again. The statutes must be construed to avoid this absurd result. (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843].)

The trial court in this case thus properly found true the allegation under section 667.5, subdivision (b), that Watson served a separate prison term for

---

[5]Section 1170.1, subdivision (c) provides: "In the case of any person convicted of one or more felonies committed while the person is confined in a state prison, or is subject to reimprisonment for escape from such custody and the law either requires the terms to be served consecutively or the court imposes consecutive terms, the term of imprisonment for all the convictions which the person is required to serve consecutively *shall commence from the time such person would otherwise have been released from prison.* If the new offenses are consecutive with each other, the principal and subordinate terms shall be calculated as provided in subdivision (a), except that the total of subordinate terms may exceed five years. This subdivision shall be applicable in cases of convictions of more than one offense in different proceedings, and convictions of more than one offense in the same or different proceedings." (Italics added.)

committing a battery while in prison for his previous conviction of assault. The court properly imposed sentence for that allegation.

### 4. *The Defendants Were Granted One Day of Unauthorized Good Time-work Time Credits.*

Respondent correctly points out that both defendants were granted more precustody good time-work time credit than they were entitled to. The abstract of judgment indicates each defendant spent 90 days in actual custody and was granted 45 days of local conduct credit.

Section 4019 plainly provides that conduct credits are to be given in increments of four days and that no credit is awarded for anything less. (§ 4019, subd. (f); *People* v. *Bravo* (1990) 219 Cal.App.3d 729, 735 [268 Cal.Rptr. 486]; *People* v. *Smith* (1989) 211 Cal.App.3d 523, 527 [259 Cal.Rptr. 515].) Here each defendant was in actual custody for 90 days, that is, 22 periods of 4 days with 2 days left over. For each of these twenty-two periods of four days, each defendant was entitled to two days of conduct credit—one day for work and one day for compliance with rules and regulations. The total good time-work time credit to which each defendant was entitled under the statute was thus 22 days multiplied by 2, or 44 days. (*People* v. *Smith, supra,* 211 Cal.App.3d at p. 527.) The award of any additional credit was unauthorized and must be corrected any time it is brought to the attention of the court. (*People* v. *Serrato* (1973) 9 Cal.3d 753, 764 [109 Cal.Rptr. 65, 512 P.2d 289]; *People* v. *Jackson* (1987) 192 Cal.App.3d 209, 221 [237 Cal.Rptr. 373].) One day of credit thus must be deducted from credits awarded to each defendant.

### DISPOSITION

The abstract of judgment for each defendant is ordered amended to show 44 days of local conduct credit. As so modified, the defendants' convictions are affirmed.

Klein, P. J., and Hinz, J., concurred.

Appellants' petition for review by the Supreme Court was denied July 15, 1993.